- "You provide a disservice to humanity, regardless of what company you work for. **You existence is sustained via corporate bribery and the blackmail of politicians...High repute? hahahahaha....**" Gigi, 14 Nov. 2008. *See* http//800notes.com/Phone.aspx/1-312-499-5900/4.

- "Houlihan Smith is just not right. They don't care about business relationships in a business that is all about people...." Just interviewed, 15 Jan 2009; *See* http//800notes.com/Phone.aspx/1-312-499-5900/7.

- "... a former senior associate who collected checks in the field for HS Advisors LLC was an **ex-con who ran a commodity pool scam and bilked 25 investors out of $5 million and spent 51 months in a federal "condo"**. Rest Of The Story - 2 Feb 2010. *See* http://800notes.com/Phone.aspx/1-312-499-5900/9.

- "**This company is the biggest scam on the face of the earth and it is definitely a lawsuit waiting to happen.** In fact, I know they are being looked at. It's sad that [employee of Houlihan] seems like such a family guy **is a scam artist. [He] has no idea what he is talking about as far as valuations....[Houlihan will]** deliver the report late and in **horrible quality.... [An employee] is an ex-con for a scam involving commodities....**" Warning, 6 April 2010; *See* http//800notes.com/Phone.aspx/1-312-499-5900/9.

Attached hereto as Exhibits B through D are copies of the defamatory postings on each Website; Exhibit B contains postings on 800Notes.com; Exhibit C, Whocallsme.com; and Exhibit D, Whocalled.us.com (emphasis added).

27. The statements in the postings attached as Exhibits B through D are patently false, harassing, and outrageous. *See* the Affidavits of Charles Botchway and Andrew Smith attached hereto as **Exhibits E and F**, respectively. None of the Plaintiffs, principals employees agents or representatives has consented in writing or otherwise to the use of their name, likeness, the Houlihan Marks, trademarks, marks, service marks or other intellectual property rights.

28. This activity is ongoing. Many of these publications occurred as late as April 6, 2010, on which date one or more of the Jane and John Doe Defendants posted the *per se* defamatory and completely untrue statements attached hereto as Exhibits B through D accusing Plaintiffs and their principals, employees, agents and representatives on 800Notes.com and Whocallsme.com of criminal conduct:

29. Plaintiffs are not now and never have been a "scam", "ripoff", "fraud", or "boiler room." Neither Plaintiffs nor any of their principals, employees, agents or representatives lie to customers, scam any individual or company, or otherwise engage in the conduct attributed to them in the postings attached hereto. None of Plaintiffs' principals, current or former employees, agents or representatives are "ex-cons" or have ever been accused or convicted of any criminal conduct. *See* Exhibits E and F.

30. Equally troubling, these defamatory postings and false statements about Plaintiffs occupy some of the top search engine results for the search terms "Houlihan Smith" on the most popular search engines, such as Google and Yahoo.

31. The owners and operators of the Websites are not mere passive forums or innocent bystanders in this regard. They profit from Plaintiffs' agony through, among other things, the increased traffic to their Websites resulting from the scandalous and outrageous nature of the comments appearing on their Websites. In order to increase the flow of "traffic" or visitors to the Websites, the Website Defendants or their owners and/or operators combine their own original content with each posting to ensure the false statements occupy or are associated with Plaintiffs on search results whenever an individual performs a search for "Houlihan Smith." This has the result of perpetuating the wrongful scheme to harm Plaintiffs and to ensure the false statements are disseminated throughout the internet and, consequently, the world.

32. For example, none of the publications on Exhibits B through D use the word "fraud." Nevertheless, a search result for "Houlihan Smith fraud" on a search engine retrieves the postings on the Websites that are attached as Exhibits B through D. On information and belief, this is because once a posting is submitted to a Website, the Website Defendants provide their own content into the HTML, metatags, source code, buried code, search terms, keywords,

9

key terms, hit generating pages, or otherwise, such as the term "fraud", for the particular webpage containing the report or comment. On information and belief, the Website Defendants use and associate the term "fraud" with "Houlihan Smith" in the HTML script or otherwise in order to direct search results for "Houlihan Smith fraud" to the Websites. It is only through the Website Defendants' own original content that internet searches associate "Houlihan Smith" with the word "fraud."

33. Further, each webpage contains an HTML script that is read by internet search engines, such as Google or Yahoo. The owners of the Websites (such as Forte and Silva) have exclusive control over the content of the HTML script for their webpage. Among other content, the HTML script contains "metatags" that are designed for internet search engines to read.

34. One such metatag is the "title metatag," which provides a title for the particular webpage. This title appears on the title bar of an internet browser program. On information and belief, the Website Defendants and/or their operators create the title metatag for each webpage on the Websites using derogatory terms such as "scam," "fraud", "ex-con", etc.

35. In addition to the title metatag, the Website Defendants and/or their operators use information submitted by the anonymous individuals as part of the "description metatag" for each webpage. Similar to the "title metatag," the description metatag appears in the HTML script for the webpage, which is displayed in the two lines of text beneath the title for each search result on search engines such as Google. For example, when Houlihan Smith is searched on Google, the results page on Google displays the defamatory content of the postings as a result of the Websites' use of the description and title metatags containing the defamatory content and intellectual property rights of Plaintiffs in the HTML.

36.  Further, on information and belief, the Website Defendants enter into agreements with entities, such as Google, that operate internet search engines to ensure the defamatory postings are associated with Plaintiffs' name and identities when searches are performed when an individual searches the internet for Plaintiffs or their principals, employees, agents or representatives who are identified by name on the Websites.

37.  The combination of the defamatory comments in the anonymous postings, agreements with internet-search companies, and the original content provided by the Website Defendants and/or their operators results in the intentional, constant and repeated publication of the defamatory materials about Plaintiffs throughout the internet and, consequently, throughout the world, 24 hours a day, seven days a week.

38.  The highly-charged, sensational words, such as "scam", "scam artists", "fraud" and "ex-con" appearing on the search results page have the intended effect of shocking any person who conducts an internet search for any business, such as Plaintiffs, unfortunate enough to be the victim of such comments posted on the Websites. The Website Defendants' intended consequence of using such sensational words, such as "scam", "scam artist", "ex-con", and "fraud" is to increase traffic to the Websites, which in turn has the effect of increasing their revenue through advertisements and otherwise. The Website Defendants solicit individuals to visit their Websites through this wrongful conduct for commercial gain.

39.  Further, in order to facilitate the wrongful dissemination of postings on the Websites, including the defamatory postings about Houlihan and its principals, employees, agents or representatives that are at issue here, 800Notes and Whocallsme obtain an irrevocable license from whomever publishes a post, including individuals residing in Illinois. The Terms of Service Agreements for 800Notes and Whocallsme provide, in part:

11

> By posting Content to any public area of the Service, you automatically grant, and you represent and warrant that you have the right to grant, to [800Notes or whocallsme] an irrevocable, perpetual, non-exclusive, fully paid, worldwide license to use, copy, perform, display, and distribute said Content and to prepare derivative works of, or incorporate into other works, said Content, and to grant and authorize sublicenses of the foregoing.

Copies of the Terms of Service Agreements for 800Notes.com and Whocallsme.com are attached as **Exhibits G and H**, respectively. It is only through this license that the Website Defendants have the right to continually disseminate the statements on their Websites.

40. The Website Defendants know the statements that are the subject of this action are false, yet they continue to disseminate the false statements throughout the world. They know Houlihan Smith owns a trademark, and its principals, employees, agents and representatives have the right to control their own publicity. Yet, they continue to publish the defamatory statements.

41. Indeed, the mere fact that Houlihan Smith registered the Houlihan Marks with the U. S. Patent and Trademark Office provides the Website Defendants with at least constructive notice of Houlihan Smith's intellectual property rights. Plaintiffs exclusively and consistently identify the Houlihan Marks as registered trademarks in the provision of their services, as evidenced by use of the same on Houlihan Smith's website (houlihansmith.com), employee stationery, emails, and employee handbook, all reference the Houlihan Marks. Plaintiffs consistently use and protect their Marks and have done so since at least 1996.

42. 800Notes, Whocallsme, and Forte also know that the statements violate the "Terms of Service Agreements" between them and the individuals and/or entities that originally posted them. The "Terms of Service Agreements" for 800Notes and Whocallsme provides, in part:

> **Contribution of Content**: Much of the content of this website is provided by and is the responsibility of the person or people who made those postings. 800notes.com does not monitor the content and takes no responsibility for such content. However,

we reserve the right to delete any Content at any time without notifying the person from which such Content originated.

You agree that you will not post Content that:

- <u>is known by you to be false, inaccurate or misleading</u>
- is for purposes of spamming
- claims the identity, characteristics or qualifications of another person
- <u>is unlawful, threatening</u>, obscene, vulgar, pornographic, profane or indecent including any communication that constitutes (or encourages conduct that would constitute) a criminal offense, <u>gives rise to civil liability or otherwise violates any local, state or federal law</u>
- <u>violates the copyright, trademark or other intellectual property rights</u>
- contains links to viruses, worms or any items of a destructive nature
- for which you were compensated or granted any consideration by any third party

\* \* \*

*See* http://800notes.com/nb/tos.aspx (emphasis added); http://whocallsme.com/nb/tos.aspx (emphasis added).

43. The Terms of Service Agreements for 800Notes.com and Whocallsme.com authorize the deletion or removal of the defamatory information, providing: "[W]e reserve the right to delete any Content at any time without notifying the person from which such Content originated." http://800notes.com/nb/tos.aspx and http://whocallsme.com/nb/tos.aspx.

44. The Terms of Service Agreements further authorizes 800Notes and Whocallsme to block the users from publishing any additional false and defamatory statements:

**Termination:** [The Website] reserves the right to immediately terminate your use of, or access to the Service if [the Website] decides at its sole discretion that you have breached this Agreement or any relevant law, rule or regulation or you have engaged in conduct that we consider to be inappropriate or unacceptable

http://800notes.com/nb/tos.aspx and http://whocallsme.com/nb/tos.aspx.

45. On April 12, 2010, Plaintiffs informed the Website Defendants in writing that the postings were false, defamatory and a violation of Plaintiffs' intellectual property rights, demanding that they remove the information from the Websites and cease all additional uses associated with the same. Copies of the April 12 demand letters are attached hereto as **Exhibits I and J**. The Website Defendants refused, without any legitimate justification and in bad faith. Their responses are attached hereto as **Exhibits K and L**.

46. Despite having knowledge of the defamatory nature of the postings, knowledge of the Plaintiffs' intellectual property rights and the right to remove to remove and/or block the continued dissemination of these materials, Forte, Silva, 800Notes and Whocallsme have refused to do so.

47. Plaintiff Houlihan Smith is the registered owner of the Houlihan Marks. The Houlihan Marks are well known and recognized both by individuals in the investment industry and, as their use demonstrates, by the Jane and John Doe Defendants who post on the Websites. Moreover, the Website Defendants' actions—creating metatags using the Houlihan Marks—demonstrate that the Houlihan Marks are recognized by the Website Defendants themselves.

48. By associating the Houlihan Marks with the term "fraud" in search engine results on Yahoo.com and Google.com, the Website Defendants use the Houlihan Marks in commerce, via their own original content, in order to attract hits to their own Websites while simultaneously defaming, disparaging, and harming Plaintiffs. Plaintiffs have never authorized any of the Defendants to use the trademark, or associate the trademark with nefarious conduct such as fraud, scams, criminal activity or otherwise.

49. The Website Defendants' conduct has the tendency to mislead individuals and customers into falsely believing the statements are true or that the association of the wrongful

conduct is accurate. It is not. The Defendants' unauthorized use dilutes and tarnishes the distinctive qualities of the Houlihan Marks.

50. These false statements and misuse of the Houlihan Marks and the individuals' right of publicity are so widely publicized by Defendants that Plaintiffs and their employees find themselves constantly having to explain and defend the false statements in their business and in their private and personal lives.

51. They have caused lost professional and business opportunities for Plaintiffs, lost profits and revenue for Plaintiffs, lost good will, they are seriously harming their reputations in the community, as well as the reputations of the principals, employees, agents or representatives of Plaintiffs.

52. The Website Defendants' practice of perpetuating the dissemination of these false statements (both through the creation of HTML script, association of the term "fraud" with Houlihan Smith, and refusing to remove the posts) has the effect of increasing the relevance of those reports to the Websites and increasing their revenue, and further has the effect of republishing the false statements.

53. Any future (or continued) publication of the defamatory statements, misuse of the Houlihan Marks, and other intellectual property rights at issue here will cause harm and damage to Plaintiffs and their principals, employees, agents and representatives without reason or just cause.

## COUNT I
### DEFAMATION *PER SE AGAINST ALL DEFENDANTS*

54. Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

55. Jane and John Doe Defendants have published to third parties without authority or privilege the false statements detailed above, and other false statements, regarding Plaintiffs and their principals, employees, agents representatives with the malicious and wrongful attempt to harm Plaintiffs' business.

56. Jane and John Doe Defendants have repeatedly published and re-published those statements *via* the internet and the Websites, all posted under false usernames.

57. Jane and John Doe Defendants' false statements constitute defamation *per se* under all applicable laws because they falsely accuse Plaintiffs of committing crimes; suggest that Plaintiffs are a "scam," "scam artists," "ex-cons," operate a "boiler room," and other wrongful conduct; prejudice Plaintiffs in their business and profession; prejudice the individuals employed by Plaintiffs in their profession; and otherwise impute wrongful and criminal conduct to Plaintiffs and their principals, employees, agents and representatives in the operation of their business and professions.

58. Jane and John Doe Defendants' false statements have damaged each Plaintiff by interfering with their business relationships, by damaging their reputations in their communities, by interfering with their business or prospective business relationships with persons concerned that some of the false statements might be true, and by harming Plaintiffs in their ability to hire new employees.

59. The Website Defendants have engaged in defamatory conduct of their own because they have included their own original content to their Websites that affirmatively associates Plaintiffs with the term "fraud," even though no posting on the Websites uses that term. The Website Defendants also included the offensive, defamatory and untrue statements in the HTML in order to direct visitors to the Websites for commercial use.

60. The Defendants' conduct has significantly harmed and damaged Plaintiffs and their principals, employees, agents and representatives. The harm and damage they are causing will continue into the future if not enjoined, leaving Plaintiffs with no remedy at all.

61. The defamatory statements are not subject to an innocent construction nor protected by the First Amendment to the Constitution.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives; (2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives; (3) A temporary, preliminary and permanent injunction blocking the publication on any of website operated by Defendants by the individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or

the intellectual property rights; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to which Plaintiffs are entitled.

## COUNT II
### DEFAMATION *PER QUOD* AGAINST ALL DEFENDANTS
### (IN THE ALTERNATIVE TO COUNT I)

62.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

63.     To the extent the defamatory statements in Count I, or any of them, are not considered *per se* defamation, Plaintiffs bring this Count II for defamation *per quod* in the alternative to Count I and incorporate all allegations in Count I herein.

64.     In addition, the conduct of the Defendants with respect to the publication and continued publication of the defamatory comments is malicious and willful, all in an attempt to harm Plaintiffs and their principals, employees, agents and representatives.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives;

(2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all

statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives; (3) A temporary, preliminary and permanent injunction blocking the publication on any of website operated by Defendants by the individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to which Plaintiffs are entitled.

## COUNT III
## VIOLATION OF THE ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT; INJURY TO BUSINESS REPUTATION; DILUTION, 765 ILCS 1036/1 *ET SEQ.* AGAINST ALL DEFENDANTS

65. Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

66. By reason of Plaintiffs' extensive labor, efforts, advertising and exclusive and consistent use of the Houlihan Marks, trade name, and service mark in connection with Plaintiffs' services since at least 1996, they have become famous and distinctive throughout the state of Illinois.

67. Plaintiffs have advertised their services in connection with the Houlihan Marks throughout the State of Illinois through the internet, electronic mailings, printed materials, and otherwise.

68. Plaintiffs have advertised and used the Houlihan Marks in all aspects of their business, including investment banking, valuations, fairness and solvency opinions, solvency and capital adequacy opinions, securities, corporate governance, private placement, asset management, and other related financial channels and trades consistently and exclusively since at least 1996. They are not aware of the use of the same or similar mark by any third parties, unless otherwise stated in this Complaint.

69. The Houlihan Marks are registered with the United States Patent and Trademark Office and on the principal register.

70. The Defendants' willful and unauthorized use of the Houlihan Marks in commerce, as set forth above, which occurred after they acquired fame and distinctiveness, have diluted and tarnished and will, unless restrained, continue to dilute and tarnish the distinctive

quality of the Houlihan Marks by destroying the association between them and Plaintiffs' reputable investment banking, financial and other services.

71. The Defendants are and continue to trade on Plaintiffs' reputation and to cause dilution and tarnishment of the Houlihan Marks with malice and without authorization.

72. The Defendants' actions are willful and in bad faith, in violation of the Illinois Trademark Registration and Protection Act. *See* 765 ILCS 1036/65; *Injury to Business Reputation, Dilution.*

73. The Defendants' conduct has directly and proximately caused Plaintiffs to suffer irreparable damage and will, unless enjoined by this Court, continue to cause Plaintiffs to suffer damages that cannot be adequately remedied at law.

74. The Website Defendants are not using, reproducing, copying, or otherwise misappropriating the Houlihan Marks or mark in comparative commercial advertising for non-commercial use, or in any form of news reporting or news commentary.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from using, reproducing, copying, or otherwise associating any of the statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives at issue in this action with the Houlihan Marks or Mark;

(2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives, from all Websites that use, reproduce, copy, or otherwise associate the Houlihan Marks or mark in connection with the defamatory

21