postings; (3) A temporary, preliminary and permanent injunction blocking the continued publication, use, reproduction, copying, or association of the defamatory materials with the Houlihan Marks or mark on any of website operated by the Website Defendants; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights; (5) Judgment in favor of Plaintiffs and against the Website Defendants, jointly and severally, in an amount not to exceed three times the damage to Plaintiffs, and their reasonable attorneys' fees, but in no event less than $50,000, plus punitive damages, interest, costs and attorneys' fees; and (6) All other relief to which Plaintiffs are entitled.

## COUNT IV
## VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT, 765 ILCS 1075/1, *ET SEQ.*, AGAINST THE WEBSITE DEFENDANTS

75.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

76.     The principals, employees, agents, and representatives of Plaintiffs have the exclusive and inherent right to control the use and commercial use of their name, identity, and likeness. The Right to Publicity Act is a law pertaining to intellectual property.

77.     In Illinois, an individual's right of publicity is governed by the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* (the "RPA"). The RPA defines "Identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. The term "Name" as used in the RPA means "the actual name or other name by which an individual is known that is intended to identify that individual." 765 ILCS 1075/5.

78.     The RPA limits the right of anyone to use an individual's identity, providing, in part: (a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons...." 765 ILCS 1075/30.

79.     The right of publicity of the individuals identified in the postings on the Websites and used without permission by the Website Defendants constitutes a property right under the Illinois Right to Publicity Act, 765 ILCS 1075/1, *et seq.*

80.     The Website Defendants' use of the identities of Plaintiffs' principals, employees, agents, and representatives in association with the defamatory and disparaging statements on the websites for commercial purposes and without their consent or authorization.

81.     The Website Defendants' impermissible use has placed, and continue to place, Plaintiffs' principals, employees, agents or representatives in a false light before the public, harming their reputations and good will, personally and professionally.

82.     The Defendants' false statements are highly offensive to reasonable persons.

83.    The Website Defendants have and continue to violate the right of publicity of Plaintiffs' principals, employees, agents and representatives who are specifically named in the Websites. They do so 24 hours a day, seven days a week, throughout the world.

84.    The Website Defendants have, without consent of Plaintiffs' principals, agents, employees and representatives, appropriated to their own use commercial or benefit the name or likeness of Plaintiffs' principals, agents, employees and representatives identified in the Websites.

85.    In addition to the personal and substantial harm caused to these individuals because of the Website Defendants' malicious use of the individuals' right of publicity, they have also suffered and continue to suffer harm in the practice of their professions and businesses.

86.    The RPA entitles Plaintiffs to injunctive relief against the Website Defendants' continued unlawful use of the identities and names of the principals, employees, agents, and representatives identified on the Websites.  765 ILCS 1075/50.

87.    The RPA entitles Plaintiffs as the representatives of their principals, employees, agents, and representatives to an award of damages, punitive damages, reasonable attorneys' fees and costs.  765 ILCS 1075/40 and 55.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them:

(1)  A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing, republishing, using, reproducing, copying or otherwise taking advantage of the right of publicity of Plaintiffs' principals, employees, agents and representatives identified by name or implication on the Websites;  (2)  A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements that name or otherwise identify any

24

principals, employees, agents or representatives of Plaintiffs from all Websites; (3) A temporary, preliminary and permanent injunction barring the Website Defendants from continuing to publish any statements on their Websites that name or otherwise identify Plaintiffs' principals, employees, agents or representatives; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000, against the Website Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to which Plaintiffs are entitled.

## COUNT V
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES AGAINST THE DEFENDANTS

88.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

89.     The Jane and John Doe Defendants' conduct detailed above, and on information and belief their yet-undiscovered conduct, is extreme and outrageous.

90.     Through the intentional conduct described in this Verified Complaint, the Jane and John Doe Defendants intend to inflict severe harm upon Plaintiffs in order to inhibit third-parties and potential customers of Plaintiffs from using their services, and are further aware that there is at least a high probability that their conduct will cause third parties and potential customers to cease or avoid doing business with Plaintiffs.

91.     Plaintiffs' business relationships constitute a property interest and, as such, are entitled to protection from unjustified tampering by another.

92.     Plaintiffs have a reasonable expectancy of entering into a valid business relationship with entities and individuals who have read or will read the defamatory postings on the Websites.

93.     The Jane and John Doe Defendants are aware of Plaintiffs' expectancy of entering into a valid business relationship with such entities and individuals.

94.     The Jane and John Doe Defendants' intentional, reckless and unjustified interference has prevented and will prevent Houlihan from realizing upon its business expectancy.

95.     Plaintiffs have been damaged as a direct result of the conduct of the Jane and John Doe Defendants.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction as set forth in Count I; (2) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials,

including their IP address, name, address, telephone number, email address and any other

information necessary to identify the individual and/or entity responsible for the defamatory

statements about Plaintiffs and their agents; (3) An award of compensatory damages in an

amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and

severally, plus punitive damages, interest, and costs; and (4) All other relief to which Plaintiffs

are entitled.

### COUNT VI
### VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE
### TRADE PRACTICES ACT, 815 ILCS 510/1 *ET SEQ.*, AGAINST ALL DEFENDANTS

96.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set

forth herein.

97.     Defendants have violated the Illinois Uniform Deceptive Trade Practices Act, 815

ILCS 510/2, because: (a) the postings disparage the services and business of Houlihan by false

and misleading representations of fact; (b) the postings falsely represent that Houlihan's services

are of a particular standard or quality; and (c) the Defendants have otherwise engaged in conduct

which has created a likelihood of confusion or misunderstanding related to Houlihan's services.

815 ILCS 510/2(a).

98.     The Jane and John Doe Defendants have and continue to make, publish and

disseminate false, misleading and/or disparaging postings regarding Houlihan's services and

business throughout the world.

99.     On information and belief, the false, misleading and/or disparaging postings were

made by the Jane and John Doe Defendants in the course of his/her/its business, vocation or

occupation.

100.    The Website Defendants have and continue to make, publish and disseminate

false, misleading and/or disparaging postings regarding Houlihan's services and business

27

through the world by including their own original content to "metatags" contained in the HTML script which was authored by them and/or their operators.

101. Further, the Website Defendants have and continue to maliciously publish and disseminate the false, misleading and/or disparaging postings of the Jane and John Doe Defendants regarding Houlihan's services and business throughout the world.

102. The Website Defendants have been informed and are aware of the deceptive character of the postings.

103. The Website Defendants have and continue to make, publish and disseminate these postings in the course of their business, vocation or occupation.

104. The continued dissemination of the false, misleading and/or disparaging materials by the Defendants will harm Plaintiffs and their principals, employees, agents and representatives in the operation of their business and provision of services. Plaintiffs have already incurred significant damages as a result of the statements and there exists a more than reasonable probability that the damages will continue or increase as a result of the Defendants' continued making, publication and dissemination of the false statements.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives;

(2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives, from all websites where they have

posted such statements; (3) A temporary, preliminary and permanent injunction blocking the publication on any of website operated by Defendants by the individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to which Plaintiffs are entitled.

## COUNT VII
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 505/1 *ET SEQ.*, AGAINST ALL DEFENDANTS.

105.    Plaintiffs incorporate and re-allege paragraphs 1 through 53, and in Count VI paragraphs 97 through 104, as though fully set forth herein.

106.   The Defendants' conduct that violates the Illinois Uniform Deceptive Trade Practices Act also gives rise to a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, which provides that it is unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act."…" 815 ILCS 505/2.

107.   Houlihan is entitled to actual and punitive damages, injunctive relief and, if it prevails, reasonable attorneys' fees.  815 ILCS 505/10a(a) and (c) (emphasis added).

**WHEREFORE,** Plaintiffs respectfully pray that the Court grant them: (1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives; (2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives, from all websites where they have posted such statements; (3) A temporary, preliminary and permanent injunction blocking the publication on any of website operated by Defendants by the individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate,

publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to which Plaintiffs are entitled.

## COUNT VIII
## COMMON LAW MISAPPROPRIATION OF INTELLECTUAL PROPERTY RIGHTS AGAINST ALL DEFENDANTS

108.    Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

109.    Defendants have misappropriated the Plaintiffs' right to control their name and reputation by making, publishing and disseminating statements that (a) disparage the services and business of Houlihan by false and misleading representations of fact; and (b) misappropriate the Houlihan Mark.

110.    The Plaintiffs have a property right in the exclusive use of the Houlihan Mark, in their own reputation, and in their current and future clients and business.

111.    The Jane and John Doe Defendants have and continue to make, publish and disseminate false, misleading and/or disparaging postings regarding Houlihan's services and business throughout the world.

112.    In doing so, the Jane and John Defendants have misappropriated the Houlihan Mark and the Plaintiffs' reputation, and severely and negatively impacted the ability of the Plaintiffs to utilize both in retaining and attracting clients and business.

113.    The Website Defendants have and continue to make, publish and disseminate false, misleading and/or disparaging postings regarding Houlihan's services and business through the world by including their own original content to "metatags" contained in the HTML script which was authored by them and/or their operators.

114.    Further, the Website Defendants have and continue to publish and disseminate the false, misleading and/or disparaging postings of the Jane and John Doe Defendants regarding Houlihan's services and business through the world.

115.    The Website Defendants' actions have been undertaken in an effort to increase traffic to their own Websites, and hence to increase advertising and other revenue.

116.    In doing so, the Website Defendants have misappropriated the Houlihan Mark and the Plaintiffs' reputation, and severely and negatively impacted the ability of the Plaintiffs to utilize both in retaining and attracting clients and business.

117.    The continued dissemination of the false, misleading and/or disparaging materials by the Defendants will harm Plaintiffs and their principals, employees, agents and representatives in the operation of their business and provision of services.  Plaintiffs have

already incurred significant damages as a result of the statements and there exists a more than reasonable probability that the damages will continue or increase as a result of the Defendants' continued making, publication and dissemination of the false statements.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them: (1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives; (2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives, from all websites where they have posted such statements; (3) A temporary, preliminary and permanent injunction blocking the publication on any of website operated by Defendants by the individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information

33

concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, and costs; and (7) All other relief to which Plaintiffs are entitled.

## COUNT IX
## INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

118.    Plaintiffs incorporate and re-allege paragraphs 1 through 117 as though fully set forth herein.

119.    Plaintiffs are entitled to an injunction ordering the Defendants to remove, or block access to, all defamatory postings from the Websites.

120.    Plaintiffs have a clearly ascertainable right in need of protection because it has the right to operate its company free from unlawful interference, defamatory and other unlawfully derogatory postings.

121.    Neither Plaintiffs nor their principals, employees, agents or representatives have an adequate remedy at law because no monetary award can remedy the significant harm the defamatory postings have already caused Plaintiffs and continue to cause Plaintiffs every day the defamatory postings remain on the Websites. Plaintiffs do not have a complete, clear, practical and efficient remedy.

122.    Plaintiffs have a likelihood of success on the merits of their claim for the statements constitute defamation per se as alleged above and the Website Defendants' conduct

aiding and abetting the publication and continued dissemination of the defamatory comments does not insulate it from liability or entry of injunctive relief.

123.    The balance of harms favors Plaintiff and its principals, employees, agents and representatives because they are suffering immeasurable harm as a result of the postings and they do not have the right to confront the malcontents because of the anonymous nature of the postings on the Websites.

124.    There is no harm to the Jane and John Doe Defendants as they are not privilege or otherwise authorized to publish defamatory statements about Houlihan, its principals, employees, agents or representatives. They do not enjoy any First Amendment rights to disseminate defamatory materials throughout the world.

125.    The Website Defendants also suffer no harm or prejudice. They have the right to remove or block access to the defamatory materials per the Terms of Service Agreements. Further, the cannot be held liable for the deletion or removal of harassing information, such as set forth in the postings at issue here.

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief: (1) In addition to the relief sought in Counts I through VIII, a temporary, preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and any of their principals, employees, agents or representatives; (2) An order requiring Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and any of their principals, employees, agents or representatives from all websites where Defendants have posted such statements; (3) An order to third party websites where Defendants have posted