trade, profession or business. (Complaint ¶ 26, Exhibits D-F.) Under Illinois law, "[a] statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992). Statements may be considered defamatory *per se* or *per quod. Kolegas*, 154 Ill. 2d at 10, 607 N.E.2d at 206. "Statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Id.*

> [At common law], four categories of statements that are considered defamatory *per se*: (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business.[2]

*Kolegas*, 154 Ill. 2d at 10, 607 N.E.2d at 206.

It is well established that statements accusing a person of being "a scam", "scam artists", "rip off", "ripping off customers" and, *inter alia*, "an ex-con" are all actionable *per se. See, e.g., Kolegas*, 154 Ill. 2d at 9-14, 607 N.E.2d at 206-208 (holding statements that plaintiff "was not for real," was "scamming" constituted defamation *per se*); *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 225-227, 617 N.E.2d 191, 198-201 (1st Dist. 1993) (holding *per se* defamatory a statement that plaintiff was "'working a scam' by filing numerous lawsuits to extract monetary settlements on a full-time basis."); *Clarage v. Kuzma*, 342 Ill. App. 3d 573, 581, 795 N.E.2d 348, 356 (3d Dist. 2003) (holding letter that implied the plaintiff was lying stated a cause of action for defamation *per se*).

---

[2]   In accordance with the Illinois Slander and Libel Act, the category of statements that are considered actionable *per se* was expanded to include statements that accuse a person of "fornication or adultery."   740 ILCS 145/1 *et seq.*

The Defendants' statements are not reasonably capable of an innocent construction. "The innocent construction rule requires courts to consider a written or oral statement in context, giving the words and implications therefrom their natural and obvious meaning. If, so construed, a statement 'may reasonably be innocently interpreted,' it will not be regarded as defamatory per se. ... Only reasonable innocent constructions will remove an allegedly defamatory statement from the *per se* category." *Kolegas*, 154 Ill. 2d at 11, 607 N.E.2d at 206-07. Here, all of the statements, when given their natural and ordinary meaning and read in the context of the postings, clearly and concisely accuse Plaintiffs of being "scam", "scam artists", "rip offs", that they "rip off their customers", and, *inter alia*, are "ex-cons." There is no reasonable innocent construction. They all fall squarely in the *per se* defamatory categories recognized by the Illinois Supreme Court. *Id.* The statements all imply that Plaintiffs and their principals, employees, agents and representatives lack integrity in performing their professional duties; committed crimes; or otherwise prejudice them, or impute a lack of ability in the performance of their trade, profession or business.[3]

The Defendants' statements do not enjoy First Amendment constitutional protection because they can reasonably be interpreted as stating actual fact. "The test for determining whether a statement is protected from defamation claims under the first amendment is whether it can reasonably be interpreted as stating actual fact. In applying this test [courts] are guided by several criteria: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that is has factual content." *Solaia Tech., LLC v. Specialty Publ. Co.*, 221 Ill. 2d 558,

---

[3]   The term "scam" is defined as "fraudulent or deceptive act or operation". MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, p. 1041 (10th ed. 1999). The term "rip-off" means "cheat, defraud, steal, to copy or imitate blatantly or unscrupulously." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, p. 1011 (10th ed. 1999).

581, 852 N.E.2d 825 (2006); *Kolegas*, 154 Ill. 2d at 15-16, 607 N.E.2d at 208. Under the standards enunciated by the Illinois Supreme Court, it is clear that none of the statements deserve constitutional protection.

All of the statements are statements of fact (and they are all false). For instance, the April 6 posting references individuals associated with Plaintiffs by first and last name; it specifically impugns the ability of an employee to perform valuations; impugns Plaintiffs' alleged hiring practices; makes specific factual assertions (albeit false) about specific valuation projects and Plaintiffs' manner of charging for the same; makes specific claims regarding what is or is not on the companies' website and the alleged reason for the same; discusses specific floors used by the company and falsely states in a purely factual nature that the companies are "under investigation." (Complaint ¶ 26, Exhibit B.) The remaining defamatory postings are all equally factual in nature and all are false. (Complaint ¶ 26, Exhibits B-F.) None of them can be read as stating anything other than actual facts. The first amendment provides them no constitutional protection. Because the postings are defamatory *per se*, cannot be innocently construed and do not warrant any constitutional protections, Plaintiffs have stated a claim for defamation *per se* against the Defendants.[4]

## 2. DEFENDANTS VIOLATED THE ILLINOIS TRADEMARK ACT

The Illinois Trademark Act specifically entitles Plaintiffs to an injunction against all of the Defendants for the wrongful and unauthorized use of the Houlihan Marks because Defendants' use has caused and continues to cause injury to Plaintiff's business and dilutes and

---

[4] Defamation *per quod* exists where the defamation is as a consequence of surrounding circumstances, or not apparent on its face. Here, the defamation appears on the face of the statements and it should not be necessary to resort to Plaintiffs' alternative claim for defamation *per quod*. Should this Court conclude that the defamation is not facially apparent, the Plaintiffs request that the Court take into consideration the surrounding circumstances to find defamation *per quod*.

tarnishes the Houlihan Marks. 765 ILCS 1036/65 ("The owner of a mark which is famous in this State shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or tradename, if the use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this Section.")

First, it is beyond question that Houlihan Smith owns the Houlihan Marks. It has used the Houlihan Marks in connection with its investment services since at least 1996; in addition, its federal registrations with the USPTO of the Houlihan Marks confirm its ownership and the validity of the same. (Complaint, Exhibit A, U.S. Trademark Registration Nos. 3,390,591 for Houlihan Smith & Company, Inc. (words only) and 3,387,276 for Houlihan Smith & Company Inc. (words and design)).

Section 65 of the Illinois Trademark Act provides a non-exclusive list of factors to consider in determining whether a mark is "famous":

> In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to:
>
> (1)  the degree of inherent or acquired distinctiveness of the mark in this State;
>
> (2)  the duration and extent of use of the mark in connection with the goods and services with which the mark is used;
>
> (3)  the duration and extent of advertising and publicity of the mark in this State;
>
> (4)  the geographical extent of the trading area in which the mark is used;
>
> (5)  the channels of trade for the goods or services with which the mark is used;
>
> (6)  the degree of recognition of the mark in the trading areas and channels of trade in this State used by the mark's owner and the person against whom the injunction is sought;
>
> (7)  the nature and extent of use of the same or similar mark by third parties; and

14

(8)     whether the mark is the subject of a State registration in this State, or a federal registration under the Act of March 3, 1881, or under the Act of February 20, 1905, or on the principal register.

765 ILCS 1036/65(a)(1)-(8).  These factors weigh heavily in Plaintiffs' favor.

The first and eighth factors directly support finding that the Houlihan Marks are famous, by the very fact of their federal trademark registrations on the Principal Register and the exclusive and continuous use of those marks for nearly 14 years in connection with their services.  In fact, under Illinois law, the "Secretary may accept as evidence that the mark has become distinctive, as used in connection with the applicant's goods or services, proof of continuous use thereof as a mark by the applicant in this State for the 5 years before the date on which the claim of distinctiveness is made."  765 ILCS 1036/10(e); *see also* 15 U.S.C. § 1052(f) (setting forth a nearly identical standard for acquired distinctiveness under the Lanham Act); *see also* TMEP § 1212 (providing that a mark that has acquired distinctiveness as a mark in relation to the named goods or services is registrable on the Principal Register).

The remaining factors also demonstrate that the Houlihan Marks are famous within the meaning of the Act in the state of Illinois.  Regarding the second, third, fourth, and fifth factors, Houlihan Smith has exclusively and consistently used the Houlihan Marks in connection with Plaintiffs' services throughout Illinois and on the internet since 1996.  (Complaint ¶¶ 21, 41, 47.) Plaintiffs use the Houlihan Marks extensively in its advertising, on the internet and elsewhere, in connection with its investment banking services and within its industry.  (Complaint ¶¶ 21, 41.) In addition, Defendants' own use demonstrates that the sixth factor is likely to weigh in favor of Plaintiffs.   The individual Jane and John Doe Defendants' use of the Houlihan Marks demonstrate recognition of the marks, as does Website Defendants' use of the Houlihan Marks in their metatags/HTML code.  (Complaint ¶¶ 31-38.) Finally, Plaintiffs are unaware of any third party use of a mark that is the same as or similar to the Houlihan Marks.

15

The Website Defendants' "commercial use" and continued "commercial use" of the Houlihan Marks entitled Plaintiffs to injunctive relief under the Illinois Trademark Act.  While Plaintiffs are unaware of Illinois case law determining whether the use of a metatags[5] constitutes commercial use under the Illinois Trademark Act, the Eleventh Circuit clearly answered this question in the positive.  In *North America Medical Corp. v. Axiom Worldwide, Inc.*, the Eleventh Circuit found that the defendant's use of plaintiff's trademarks in defendant's metatags constituted "use in commerce" under the Lanham Act because they were used as a part of defendants "effort to promote and advertise its products on the Internet."  *North America Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218-19 (11th Cir. 2008).

Moreover, trademark dilution under Illinois law means "the lessening of the capacity of a famous mark to identify and distinguish goods or services, <u>regardless of the presence or absence of</u> (1) competition between the owner of the famous mark and other parties, or (2) <u>likelihood of confusion, mistake, or deception</u>."  765 ILCS 1036/5(c) (emphasis added).  The New Jersey District Court has considered commercial use in the context of a claim for trademark dilution under a New Jersey dilution statute, which is instructive here.  In *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 287 (D. N.J. 1998), plaintiff sought a preliminary injunction against a defendant, alleging a claim for dilution pursuant to both 15 U.S.C. § 1125(c) and the New Jersey state dilution law.  Although the Court rested its decision in part on defendant's use of the website as a conduit to defendant's own website, which sold merchandise, the Court also offered a second line of reasoning for finding that the defendant's conduct constituted <u>commercial</u> use:

---

[5] "Metatags are HTML [HyperText Markup Language] code intended to describe the contents of the web site. ... The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be 'hit' in a search for that keyword and the higher on the list of 'hits' the web page will appear." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 n.1 (7th Cir. 2002) (internal citations omitted).  Although a user does not initially view the source code when viewing the contents of a website, it is, in fact, visible to the public.

The conduct of Defendant also constitutes a commercial use of the mark and the Name of the Plaintiff Organization because it is designed to harm the Plaintiff Organization commercially by disparaging it and preventing the Plaintiff Organization from exploiting the Mark and the Name of the Plaintiff Organization. In addition, the Defendant Internet site has and will continue to inhibit the efforts of Internet users to locate the Plaintiff Organization Internet site.

993 F. Supp. at 309 (emphasis added). The Court concluded that plaintiffs had demonstrated a likelihood of success on its claim for dilution pursuant to section 1125(c) of the Lanham Act and that dilution was likely established under state law. *Id.* at 311.

Third, the website Defendants have been wrongfully using the Houlihan Marks after they became famous. Fourth, Plaintiffs are likely to succeed in demonstrating that the Website Defendants use of the Houlihan Marks causes dilution of the distinctive quality of the mark. The Illinois Trademark Registration and Protection Act defines "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 765 ILCS 1036/5(c). By associating the Houlihan Marks with the term "fraud" in search engine results on Yahoo.com and Google.com, the Website Defendants use creates an association between the Houlihan Marks and "fraud" or "scam" investment services. This conduct, in and of itself, harms the reputation of the Houlihan Marks and therefore dilutes their distinctive qualities.

Finally, Plaintiffs are likely to succeed in demonstrating that Website Defendants willfully intended to cause dilution of the Plaintiffs' famous Houlihan Marks. Section 65 of the Illinois Trademark Act states in relevant part:

In an action brought under this Section, the owner of a famous mark shall be entitled only to injunctive relief in this State, unless the person against whom injunctive relief is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner

shall also be entitled to the remedies set forth in this Act, subject to the discretion of the court and the principles of equity.

765 ILCS 1036/65(a).   Plaintiff issued a cease and desist letter on April 12, 2010, informing Website Defendants that numerous statements displayed on the Website were fraudulent and defamatory and requesting that those statements be removed.   (Complaint ¶ 45, Exhibits I-L.) Nonetheless, the Website Defendants are and continue to willfully and in bad faith trade on Plaintiffs' reputation and mark, violating this Act and causing dilution of the Houlihan Marks. (Complaint ¶¶ 46-47.)   For those reasons, Plaintiffs are thus likely to succeed in demonstrating willful intent and are therefore entitled to the other remedies set forth in the Illinois Trademark Act, including monetary damages.

### 3.   The Website Defendants Violated The Illinois Right of Publicity Act

Section 30 of the Illinois Right to Publicity Act, 765 ILCS 1075/1 *et seq.* ("RPA"), entitled "limitations regarding use of an individual's identity", makes it illegal for an individual or entity – such as Forte, 800Notes, Whocallsme.com, Silva or Whocalled.us.com – to "use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative." 765 ILCS 1075/30; *see, e.g., Flentye v. Kathrein*, 485 F. Supp. 2d 903 (N.D. Ill. 2007) (holding that the plaintiff stated a claim under the RPA by alleging that defendants' use of the plaintiff's name through domain names and metatags for commercial gain was barred under the Act); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005) (holding plaintiff stated a claim under the RPA because defendant's use of model's likeness in packaging and promotion of hair product was without consent and for commercial gain).   In direct contravention of the RPA, the Website Defendants have maliciously and in bad faith used and continued to use the individual identities, names and likeness of Plaintiffs'

principals, agents, employees and representatives[6] for commercial purposes without their consent, written or otherwise. (Complaint ¶¶ 27, 31-39.)

That they are doing so for commercial use is clear. The Websites are in the business of operating "gripe sites." They solicit individuals in Illinois and elsewhere to visit the Websites in order to post complaints. To steer consumers to the Website and increase advertising revenue and donations, the Website Defendants create HTML text, metatags and source code directly using and associating the names and identities of Plaintiffs' individual employees with scandalous accusations, such as "scam," "fraud", "ripoff", "ex-con", among others. Not only does this seriously harm the individuals' rights, but it has the intended effect of increasing the visibility and "traffic" to the website and, consequently, the revenue and donations from companies, such as Verizon, to the Website owners. (Complaint ¶¶ 31, 38.) Worse, it disparages their names, reputation and identities 24 hours a day, seven days a week throughout the world, all for pecuniary gain without a smidgen of thought for the Plaintiffs' rights. (Complaint ¶¶ 31-38, 45-46.)

The Website Defendants thus are impermissibly using, and continue to use, the individuals' names and identities for commercial purposes, (Complaint ¶¶ 31-38), in violation of the RPA. 765 ILCS 1075/30; *Flentye v. Kathrein*, 485 F. Supp. 2d 903 (N.D. Ill. 2007) (holding that the plaintiff stated a claim under the Illinois Right to Publicity Act by alleging that defendants' use of the plaintiff's name through domain names and metatags for commercial gain was barred under the Act); *see, e.g., Mastercard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824 (N.D. Ill. 2009) (enjoining defendant's trademark infringement through use of plaintiff's mark in

---

[6] The principals, employees, agents and other representatives of Plaintiffs who are disparaged in the postings on the Websites and whose names and identities the Website Defendants are impermissibly using have authorized Plaintiffs to maintain this action on their behalf pursuant to Section 20 of the RPA. 765 ILCS 1075/20, Complaint, Exhibits E and F.

metatags, source code, and domain names); *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) (holding defendants violated the Lanham Act by using two of plaintiffs' registered marks on defendant's website within metatags in order to influence search results to increase the sale of its goods and services); *Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998).

This Court has the right to enjoin the Website Defendants' conduct, as specifically provided under Section 50 of the RPA. 765 ILCS 1075/50 ("Upon showing of cause as required by [735 ILCS 5/11 *et seq.*], for the issuance of injunctive relief, the court may issue such temporary restraining orders, preliminary injunctions, and permanent injunctions as may be appropriate under this Act.") For the foregoing reasons, the Plaintiffs and the individuals they represent in this action have established a likelihood of success on the merits of this claim entitling them to entry of a temporary restraining order compelling the Website Defendants to cease all use of the individuals' names and identities in on the Websites and otherwise.

4.      **The Defendants Have And Continue To Tortiously Interfere With Plaintiffs' Prospective Economic Advantage**

To state a claim for tortious interference with prospective economic advantage, the Plaintiffs must establish: "(1) that there exists a valid business relationship or expectancy, (2) of knowledge by the tortfeasor of that business relationship or expectancy, (3) of an intentional interference on the part of the tortfeasor inducing or causing the termination of the business relationship or expectancy, and (4) of resultant damage to the party whose relationship or expectancy has been disrupted." *Dugan Oil Co. v. Coalition of Area Labor*, 98 Ill. App. 3d 126, 134, 423 N.E.2d 1373, 1379 (4th Dist. 1981).

Plaintiffs have alleged that Defendants' conduct has interfered with Plaintiffs' existing and expected business relations and contracts. (Complaint ¶¶ 90, 94). The Defendants know or

reasonably should know that Plaintiffs have an expectancy of entering into and continuing its current business relationships. Despite this knowledge, the Defendants have intentionally, and with the specific intent of harming Plaintiffs and their principals, employees, agents, and representatives, published the defamatory comments and, with respect to the Website Defendants, impermissibly used Plaintiffs' intellectual property rights. (Complaint at ¶¶ 25-31, 45-50.) Their conduct is causing Plaintiffs a significant loss in revenue, customers, and goodwill. (Complaint ¶¶ 49-53.)

In *Dugan Oil*, the Court enjoined the defendants' activities and interference with the plaintiffs' business relationships through unlawful picketing of the plaintiffs' business establishment. *Dugan Oil*, 98 Ill. App. 3d at 134, 423 N.E.2d at 1379. In granting the plaintiffs an injunction against the defendants, the court held:

> The plaintiffs possessed a property right in their businesses that needed protection. As the result of the defendants' picketing, irreparable and substantial damage was being inflicted upon the plaintiffs by the loss of customers, loss of potential customers, and loss of good will, which in total amounted to loss of revenue or income to a degree that placed the businesses in a financially hazardous position. Because of the uncertainty as to damages and loss of good will, the extraordinary relief in the form of a preliminary injunction was warranted.

*Id.*

In *ABC Trans National*, the court enjoined an ex-employee of the plaintiffs from continuing to disparage the plaintiff's business and integrity and stealing its clients. *ABC Trans Nat'l*, 62 Ill. App. 3d at 683-88, 379 N.E.2d at 1236-40. The defendant, an ex-employee, was disparaging the plaintiff's business to the plaintiff's employees in the hopes that they would come to work for him in a competing business he established at the tail end of his employment with plaintiff. *Id.* Defendant also began informing plaintiff's customers that plaintiff was insolvent and would be out of business in the near future. *Id.* The court reversed the lower

court and granted the plaintiff an injunction against defendant. *Id.* This court should follow the reasoning and holding in *Dugan Oil* and *ABC Trans National* and enter an injunction against the Defendants.

### 5.    Defendants Violated The Uniform Deceptive Trade Practices Act

Defendants have violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (the "UDTPA"), because: (a) the postings disparage the services and business of Houlihan by false and misleading representations of fact; (b) the postings falsely represent that Houlihan's services are of a particular (poor) standard or quality; and (c) the Defendants have otherwise engaged in conduct which has created a likelihood of confusion or misunderstanding relating to Houlihan's services. 815 ILCS 510/2(a). The UDTPA provides that a person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person "(7) represents that good or services are of a particular standard, quality, or grade or that good are a particular style or model, if they are of another; (8) disparages the goods, services or business of another by false or misleading representations of fact;....and (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(7), (8) and (12).

In order to prevail under the UDTPA, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding. 815 ILCS 510/2(b). Moreover, a person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court deems reasonable; proof of monetary damage, loss of profits or intent to deceive is not required. 815 ILCS 510/3. Publishers, broadcasters, printers or other persons engaged in the dissemination of information who publish or broadcast material with knowledge of its deceptive character may be held liable under the UDTPA. 815 ILCS 510/4.

Here, both the Defendants have and continue to make, publish and disseminate false, misleading and/or disparaging postings regarding Houlihan's service and business. (Complaint, Exhibits B-F.) The statements are all false, and many directly impugn the Plaintiffs' services:

> He has no clue what he is talking about as far as valuations. They hire kids to do the reports and if you are given a quote don't believe it. They will find a way to squeeze more money out of you. … If a company asks Houlihan if they provide a certain service and they have never done it, they will tell you they have, try to figure it out, deliver the report late and in horrible quality. Auditors have not accepted these reports and the company is forced to spend more money.

(Complaint, Exhibits B, E and F.) The statements unequivocally disparage the business of the Plaintiffs and the quality of the services that they provide.

On information and belief, the Jane and John Doe Defendants have made the statements in the course of their business, vocation or occupation. At least one is believed to be an ex-employee of the Plaintiffs ("I was stupid enough to take a job with this strong armed scam company…"). (Complaint ¶ 26, Exhibits B-D.) The Website Defendants clearly have made the statements in the course of their business or occupation, as their business is the business of running the Websites, which includes attracting visitors to the Websites (which is accomplished through these sensational and false postings), which in turn increases the advertising and other revenue of the Websites.

These facts clearly indicate a violation of the UDTPA. *See Flentye v. Kathrein*, 485 F. Supp. 2d 903, 918 (N.D. Ill. 2007) (allegations sufficient to survive a motion to dismiss; false and misleading statements of fact disparaging plaintiff's business state a claim under UDTPA); *M&R Printing Equip., Inc. v. Anatol Equip. Mfg. Co.*, 321 F. Supp. 2d 949, 951 (N.D. Ill. 2004) (same; statements in question directly impugned the quality of the plaintiff's business and services); *Lampi Corp. v. American Power Products, Inc.*, No. 93 C 1225, 1994 WL 501996, at * 3 (N.D. Ill. 1994) (statements calling viability of plaintiff into question and its ability to deliver

orders disparaged plaintiffs goods, services or commercial activities and were sufficient to withstand motion to dismiss). Moreover, Plaintiffs do not have to prove monetary damages, loss of profit or intent to deceive to merit injunctive relief. *See, e.g., Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 866, 893 N.E.2d 981, 996 (1st Dist. 2008) (appellate court held that defendants violated UDTPA). The Plaintiffs are being damaged by the Defendants' practices in the form of the public's misunderstanding of the quality of their services and lost business; this is sufficient to warrant injunctive relief. (Complaint ¶¶ 49-51, Exhibits E and F.)

While the UDTPA arguably does not apply to a publisher or other person engaged in the dissemination of information who publish, broadcast or reproduce material without knowledge of its deceptive character, 815 ILCS 510/4, the Website Defendants were expressly put on notice that the postings were false. This notice included the provision of an affidavit from one of the principals of the Plaintiffs attesting to false and damaging nature of the postings. (Complaint ¶ 45, Exhibit I.) Despite the being aware of the false, misleading and damaging nature of the postings, the Website Defendants categorically refused to remove the posts. (Complaint ¶ 45, Exhibits K and L.) The UDTPA *does apply* to a publisher or other disseminator of information who publishes, broadcasts or reproduces material with knowledge of the material's deceptive character.

In sum, there is no question here that postings have been made that directly impugn the quality of the Plaintiffs services by the Defendants in the course of their business or occupation, and that the Plaintiffs have been and are continuing to be harmed by this conduct. The Website Defendants have been made aware of the false nature of these postings, but have refused to take the postings down. The Defendants conduct has been voluntary and intentional. The Plaintiffs

thus can show a likelihood of success on the merits of a claim for injunctive relieve under the

UDTPA and are also entitled to attorneys' fees and costs.[7]

### 6.    Defendants Have Violated Common Law Rules of Misappropriation

The Defendants have misappropriated the Plaintiffs' right to control their name and

reputation by making, publishing and disseminating statements that (a) disparage the services

and business of Houlihan by false and misleading representations of fact; and (b) misappropriate

the Houlihan Marks. Illinois law recognizes a common law doctrine of misappropriation. *Board

of Trade v. Dow Jones & Co.,* 108 Ill. App. 3d 681, 689, 439 N.E.2d 526, 532 (1st Dist. 1982),

*aff'd,* 98 Ill. 2d 109, 456 N.E.2d 84 (1983). Misappropriation is a species of unfair competition.

*Id.*; *see also International News Service v. Associated Press,* 248 U.S. 215 (1918) (enunciating

the doctrine of misappropriation). It does not rest solely on direct competitive injury, but instead

rests "on the broader principle that property rights of commercial value are to be and will be

protected from any form of unfair invasion or infringement." *Board of Trade,* 108 Ill. App. 3d at

689, 439 N.E.2d at 532 (citing *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.,*

199 Misc. 786, 101 N.Y.S.2d 483, 492 (Sup. Ct. 1950), *aff'd,* 279 App. Div. 632, 107 N.Y.S.2d

795 (1st Dept. 1951) (defendant violated the opera company's right to control its name and

reputation)).

As explained by the court in *Metropolitan Opera*:

> The modern view as to the law of unfair competition does not rest solely on the
> ground of direct competitive injury, but on the broader principle that property
> rights of commercial value are to be and will be protected from any form of unfair
> invasion or infringement and from any form of commercial immorality, and a
> court of equity will penetrate and restrain every guise resorted to by the wrong-
> doer. The courts have thus recognized that in the complex pattern of modern

---

[7]  For the same reasons as exist under UDTPA, the Plaintiffs have shown a likelihood of success
on the merits under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS
505/1 *et seq.* (the "Consumer Fraud Act"). The Consumer Fraud Act expressly proves that a
violation of the UDTPA is a violation of the Consumer Fraud Act. 815 ILCS 505/2.

business relationships, persons in theoretically noncompetitive fields may, by
unethical business practices, inflict as severe and reprehensible injuries upon
others as can direct competitors.

199 Misc. at 796, 101 N.Y.S.2d at 492. The doctrine will "extend to protect the complaining

party from unfair competition or trade practices regardless of how novel or ingenious those

practices are. [citation omitted]  The doctrine is 'adaptable and capacious' and has been

described as 'encompassing any form of commercial immorality." *Board of Trade,* 108 Ill. App.

3d at 696-97, 439 N.E.2d at 537.

In the present case, the Plaintiffs have a property right in the Houlihan Marks. They also

have the right to the exclusive use of their own name and reputation. *Metropolitan Opera,* 199

Misc. at 797, 101 N.Y.S.2d at 494 ("The right to the exclusive use of one's own name and

reputation has long been recognized by the courts..."). In using the Houlihan name in the

postings and associating that protected name with false and defamatory statements that impugn

the quality of the services the Plaintiffs offer and correlate Houlihan with terms such as "scam",

"scam artists", "rip offs", "rip off their customers", and "ex-cons", the Defendants have

misappropriated the Houlihan Marks, as well as the Plaintiffs' name and reputation. The

Plaintiff's are entitled to protection by way of injunction. *See, e.g., National Football League*

*Properties, Inc. v. Consumer Enterprises, Inc.,* 26 Ill. App. 3d 814, 819-20 327 N.E.2d 242, 247

(1st Dist. 1975) (finding that plaintiff may be granted relief under a theory of unfair competition

even though direct competition was not present; court granted injunction).

### D.    THE BALANCE OF EQUITIES STRONGLY FAVORS PLAINTIFFS

The trial court must decide whether the balance of hardships to the parties and public

interest supports granting a preliminary injunction. *Gold v. Zipf Communications Co.,* 196 Ill.

App. 3d 425, 435-36, 553 N.E.2d 404, 411 (1st Dist. 1989). The balance of harm decidedly

favors Plaintiffs. They are being subjected to constant defamatory statements about their

26

integrity and quality of their services throughout the world, 24 hours a day, seven days a week. The Defendants are disparaging their reputations and the reputations of their principals, employees, agents, and representatives and illegally using Plaintiffs' intellectual property rights without authorization or right. The Defendants' speech is not protected by the Constitution. The Website Defendants have the right to remove the materials and stop using the same under the Terms of Service Agreement and under the CDA, but simply refuse. Why? Because the scandalous comments generate more money for them. The Court can and should enjoin their egregious and unlawful conduct.

WHEREFORE, Plaintiffs, Houlihan Smith & Company, Inc.® and Houlihan Smith Advisors, Inc., respectfully request that the Court enter: (1) A temporary injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc.®, Houlihan Smith Advisors, LLC, their affiliates and any of their employees, agents or representatives, including but not limited to Andrew (Andy) Smith and Charles Botchway;  (2) A temporary injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc.®, Houlihan Smith Advisors, LLC, and all of their affiliates and employees, agents or representatives, including but not limited to Andrew (Andy) Smith and Charles Botchway, from all of the Websites;  (3) A temporary injunction ordering the Website Defendants to block all access by the individuals who originally posted the defamatory statements from accessing the Websites and/or from posting any comments about Plaintiffs;  (4) A temporary injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including from the html

text described in Plaintiffs' Verified Complaint;   (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the identity of individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for publishing the defamatory statements;   (6) An order allowing the parties to conduct expedited discovery over the next 30 days to determine the identities of the individuals and/or entities publishing the false and defamatory statements about Plaintiffs' and their employees, agents, principals and other representatives;   (7) An order scheduling a preliminary hearing in this matter on or before May 15, 2010; and   (8) Such other relief to which Plaintiffs are entitled.

HOULIHAN SMITH & COMPANY INC. ® and
HOULIHAN ADVISORS, LLC

By: _____
           One of their Attorneys

Richard P. Darke
Rosanne Ciambrone
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6700
(312) 499-6701 (fax)
Firm Id. No.: 38820

28