## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

HOULIHAN SMITH & COMPANY, INC.  AND)
HOULIHAN SMITH ADVISROS LLC,            )
                                                          )
            Plaintiff,                                )
                                                          )
vs.                                                     )
                                                          )
JULIA FORT INDIVIDUALLY AND DBA   )
800NOTES.COM ADVENT LLC, JULIA    )
FORTE DBA WHOCALLSME.COM ET AL   )
                                                          )
            Defendants.                            )

2010-CV-2412
Hon. Virginia Kendall
Mag. Judge Valdez

## NOTICE OF REMOVAL

| Document | Page No. |
|---|---|
| Notice of Removal | 3 |
| Proof of Service | 6 |
| Cook County Chancery Court Complaint | 8 |
| Exhibits to Cook County Complaint | 46 |
| Exhibit List to Cook County Complaint | 47 |
| Exhibit A | 48 |
| Exhibit B | 52 |
| Exhibit C | 73 |
| Exhibit D | 79 |
| Exhibit E | 80 |
| Exhibit F | 92 |
| Exhibit G | 99 |
| Exhibit H | 100 |

**Exhibit I**                                                       **103**

**Exhibit J**                                                     **106**

**Exhibit K**                                               **108**

**Exhibit L**                                               **110**

**Notice of TRO Motion**                                  **111**

**Motion for TRO**                                       **113**

**Order Granting TRO**                                  **116**

**Plaintiff's Memroandum in Support of TRO**            **120**

\

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOULIHAN SMITH & COMPANY, INC., and HOULIHAN SMITH ADVISORS LLC, | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) |
| JULIA FORTE, individually, JULIA FORTE d/b/a 800notes.com AdventLLC, JULIA FORTE d/b/a whocallsme.com, JAMON SILVA, individually, JAMON SILVA d/b/a whocalled.us.com JOHN DOES 1-30; JANE DOES 1-30, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 2010 CV 2412

### NOTICE OF REMOVAL

Defendants Julia Forte, Julia Forte d/b/a 800notes.com AdventLLC, and Julia Forte d/b/a whocallsme.com (together, "Forte") join in removing this case from the Circuit Court of Cook County, Illinois (without waiving any defenses based on lack of service and lack of personal jurisdiction), for the following reasons.

1. Houlihan Smith & Company and Houlihan Smith Advisors are citizens of Nevada and Illinois, in that they allege in the attached complaint that they are incorporated in Nevada and have their principal place of business in Illinois. Although Houlihan Smith Advisors both identifies itself as a limited liability company and alleges that it is "incorporated," on information and belief its managing member is Houlihan Smith & Company, and its managers are Charles Botchway, a citizen of Illinois, and Andrew D. Smith, who on information and belief is a citizen of Illinois.

2. Forte lives in North Carolina, and is a North Carolina citizen.

-1-

3. On information and belief, Jamon Silva lives in Lexington, Massachusetts and therefore he and Jamon Silva d/b/a whocalled.us.com is a citizen of Massachusetts.

4. The citizenship of the plaintiffs in this case is diverse from the citizenship of all the defendants. The amount in controversy exceeds $75,000; the complaint contains nine separate counts, seven of which seek at least $50,000 in damages against Forte, and in addition seeks both injunctive relief and attorney fees, each of which must be added to determine the amount in controversy.

5. Accordingly, this Court has original jurisdiction of the Complaint under 28 U.S.C. § 1332.

6. Plaintiffs claims rights under federally registered trademarks, and implicitly asserts federal law trademark claims. The Court thus has original jurisdiction under 28 U.S.C. §§ 1331, 1337 and 1338, and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

7. The attached complaint was apparently filed on April 15, 2010, and was emailed to Forte in the afternoon of April 16, at the time when plaintiff was going to court to obtain a TRO without notice. It has not been served on Forte (Forte has received the complaint only by email, which is not proper service under Illinois law), and on information and belief it has not been served on Silva. Accordingly, Silva's concurrence in this removal notice is not required.

> /s/ L. Steven Platt
> L. Steven Platt
> lsplatt@arnoldandkadjan.com
> ARNOLD & KADJAN
> 19 West Jackson Blvd.
> Chicago, Illinois 60604
> 312-236-0415

-2-

    /s/   Paul Alan Levy

Paul Alan Levy
plevy@citizen.org
(pro hac vice admission to be sought)
Gregory Beck
gbeck@citizen.org

Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

April 19, 2010

Attorneys for Defendants

-3-

## <u>Certificate of Service</u>

The undersigned hereby certifies that the foregoing was personally served on the

undersigned on this 20th day of April 2010 by messenger:

Richard P Darke
Rosanne Ciambrone
Duane Morris
190 S LaSalle Suite 3700
Chicago IL 60603
312 499 6700
312 499 6701


L. Steven Platt

# EXHIBITS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| HOULIHAN SMITH & COMPANY, INC.® and HOULIHAN SMITH ADVISORS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | **10CH16477** |
| v. | ) ) ) | Case No. |
| JULIA FORTE, individually; JULIA FORTE d/b/a 800Notes.com Advent LLC; JULIA FORTE d/b/a whocallsme.com; JAMON SILVA, individually; JAMON SILVA d/b/a whocalled.us.com; JOHN DOES 1-30; and JANE DOES 1-30, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Houlihan Smith & Company, Inc.® ("Houlihan Smith") and Houlihan Smith Advisors,

LLC ("Houlihan Smith Advisors") (Houlihan Smith and Houlihan Smith Advisors are

collectively referred to as "Plaintiffs" or "Houlihan"), for their complaint against the Defendants,

Julia Forte, individually ("Forte"); Julia Forte d/b/a/ 800Notes.com Advent LLC ("800Notes");

Julia Forte d/b/a whocallsme.com ("Whocallsme"); Jamon Silva, individually ("Silva"); Jamon

Silva d/b/a whocalled.us.com ("Whocalled.us") (800Notes, Whocallsme, Whocalled.us, Forte,

and Silva collectively are referred to as the "Website Defendants"); John Does 1-30; and Jane

Does 1-30 (collectively are referred to as the "Jane and John Doe Defendants") (the Website

Defendants and the Jane and John Doe Defendants collectively are referred to as the

"Defendants"), for defamation *per se* and *per quod*, violation of the Illinois Trademark

Registration and Protection Act, violation of the Illinois Right of Publicity Act, misappropriation

of trademark and mark, violation of the Illinois Fair Trade Practices Act, violation of the Illinois

Consumer Fraud and Deceptive Business Practices Act, and for the issuance of a temporary restraining order, preliminary and permanent injunction, state as follows:

## NATURE OF ACTION

1.      This action concerns numerous false, defamatory and disparaging statements about Houlihan on the websites 800Notes.com, Whocallsme.com, and Whocalled.us.com. (800Notes.com, Whocallsme.com and Whocalled.us.com are collectively referred to as the "Websites."). Julia Forte owns and operates the websites 800 Notes.com and Whocallsme.com. Jamon Silva owns and operates the website Whocalled.us.com.

2.      Over the course of the past year, unidentified individuals and/or entities, *i.e.* the Jane and John Doe Defendants, have engaged in a malicious campaign to ruin the reputation of Plaintiffs and their principals, employees, agents and representatives by repeatedly publishing and re-publishing false and defamatory statements on the Websites.

3.      As recently as April 6, 2010, the wrongful campaign to harm Plaintiffs resulted in the publication of a harassing defamatory and disparaging comment posted on 800Notes and Whocallsme. These statements attribute criminal conduct to Plaintiffs and two of their principals, impute an inability by Plaintiffs and their principals to properly discharge the duties of their employment and, *inter alia*, impute an inability of Plaintiffs and their principals to properly perform the duties of their profession and business. These statements are completely false.

4.      On April 12, 2010, Plaintiffs provided written notice to the Website operators, informing them that the statements in the April 6, 2010 posting, as well as additional postings on the Websites, were false and defamatory.  Plaintiffs requested that the Website Defendants voluntarily remove, and/or block access to, the defamatory postings.  The Website Defendants have refused without reason or justification to comply with Plaintiffs' request.

2

5.      To remedy the continued dissemination and impermissible use of Plaintiffs'
intellectual property rights and to stop the significant decline and loss of revenue the Plaintiffs
currently are suffering, Plaintiffs ask this Court to enter a temporary restraining order,
preliminary injunction, and permanent injunction against the Website Defendants and the owners
and/or operators of these Websites (Forte and Silva), to remove and/or block access to all of the
defamatory postings on the Websites until further order of this Court.

6.      Plaintiffs bring claims for defamation against the individuals and/or entities that
have posted the defamatory comments (the Jane and John Doe Defendants) and against the
Website Defendants because of their substantial assistance and continued dissemination and re-
publication of the defamatory materials and malicious use of Houlihan Smith's trademarks and
other intellectual property rights, for defamation *per se*, violation of the Illinois Trademark
Registration and Protection Act, violation of the Illinois Right of Publicity Act, misappropriation
of trademark, and violation of the Illinois Consumer Fraud and Deceptive Practices Act, Illinois
Uniform Deceptive Trade Practices Act.

7.      Plaintiffs are entitled to injunctive relief.  They have a protectable interest in the
continued operation of their business free from unlawful interference, the use and enjoyment of
Houlihan Smith's trademarks, right of publicity, and other intellectual property rights.  Plaintiffs
do not have an adequate remedy at law as no monetary award can possibly compensate Plaintiffs
for the significant revenue and goodwill they have already lost and continue to lose as a result of
the defamatory postings and malicious violation of their intellectual property rights throughout
the world.  The balance of harms strongly favors Plaintiffs.

8.      The Defendants will suffer no prejudice or harm.  They have the absolute right to
remove access to all of the harassing and defamatory postings.  They do not have the right to use

3

and misappropriate Plaintiffs' intellectual property rights. The Jane and John Doe Defendants' defamatory statements are not entitled to any protections, neither at common law nor under the Constitution. Moreover, the Communications Decency Act, 47 U.S.C. § 2301, *et seq.* ("CDA"), does not insulate the Website Defendants from liability in this action or Plaintiffs' request for injunction relief.

9.      This is an emergency because the April 6, 2010 posting falsely represents that principals of Plaintiffs are scam artists and ex-cons, among other false statements, which is causing significant harm to Plaintiffs and their owners and managers. By entering a temporary restraining order and preliminary injunction blocking access to, or removing the defamatory postings, the Court can maintain the *status quo* among all of the parties.

## PARTIES

10.      Houlihan Smith is an investment banking firm that is incorporated in Nevada and has its principal place of business in Chicago, Illinois.

11.      Houlihan Smith Advisors is a financial services company that is incorporated in Nevada and has its principal place of business in Chicago, Illinois.

12.      Forte, an individual, is the registered owner of the websites 800Notes.com and Wocallsme.com, and a resident and citizen of North Carolina. Forte does business as and/or operates 800Notes.com and as Whocallsme.com.

13.      Silva, an individual, is the registered owner of the website Whocalled.us.com, and a resident and citizen of Massachusetts. Silva does business as and/or operates Whocalled.us.com.

4

14.    Jane and John Doe Defendants have been anonymously posting and continue to post false and disparaging statements about Plaintiffs and their principals, employees, agents and representatives on the Websites.

15.    On information and belief, the Jane and John Doe Defendants consist of a group of individuals and/or competitors of Plaintiffs that create email accounts using fictitious names in order to anonymously post false statements about Plaintiffs.

16.    Based on the information contained in the April 6, 2010 posting on 800Notes and Whocallsme, the individual making the defamatory comments in this posting is a former employee of Plaintiffs in their Chicago, Illinois office.

## JURISDICTION AND VENUE

17.    This Court has personal jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209(a) and (b) because they have transacted business in Illinois and intentionally directed harmful and egregious tortious and intentional acts to Plaintiffs, whose principal place of business is located in Chicago, Illinois, in reckless or intentional disregard for the truth of the postings and harm they are causing Plaintiffs.  735 ILCS 5/2-209(a) and (b).  Further, the Website Defendants also engage in substantial internet advertising and solicitations over the internet, in Illinois, and throughout the world.

18.    Venue is proper in this Circuit Court under 735 ILCS 5/2-101 because some or all of the events and transactions that form the basis of this action occurred in Cook County, Illinois.

## FACTUAL BACKGROUND

19.    Houlihan Smith is an investment banking firm based in Chicago, Illinois that provides financial advisory and financing services to public and private businesses in Illinois and throughout the United States.

20.    Houlihan Smith Advisors is a financial services firm based in Chicago, Illinois.

5

21.     Houlihan Smith is the owner of U.S. Trademark Registration Nos. 3,390,591 for
Houlihan Smith & Company, Inc. (words only) and 3,387,276 for Houlihan Smith & Company
Inc. (words and design) (hereinafter referred to as "the Houlihan Marks"). *See* **Exhibit A.** The
Houlihan Marks have been used in connection with Houlihan Smith's financial advisory and
financing services throughout the state of Illinois and on the internet. This use has been
continuous and exclusive since at least 1996. *See* the Affidavits of Charles Botchway and
Andrew Smith attached hereto as **Exhibits E and F**, respectively.

22.     Houlihan Smith is a registered broker dealer with the Financial Industry
Regulatory Authority ("FINRA"). FINRA is the largest independent regulator for all securities
firms doing business in the United States. "FINRA is dedicated to investor protection and
market integrity through effective and efficient regulation and complementary compliance and
technology-based services." *See* http//www.finra.org.

23.     As a member of FINRA, any customer complaints regarding Houlihan Smith's
financial and security-based services in the financial industry are required to be filed and
processed before FINRA. Tellingly, throughout their existence, there have never been any
customer complaints filed against Plaintiffs before FINRA or its predecessor, National
Association of Security Dealers.

24.     However, in a malicious scheme, or individual spite, to harm and disparage the
reputations of Plaintiffs and their principals, employees, agents and representatives, various
unidentified individuals and/or entities (*i.e.*, the Jane and John Doe Defendants) have been
anonymously posting and continuing to post false and disparaging statements about Plaintiffs
and their principals, employees, agents and representatives on the Websites.

6

25.    To carry out their wrongful conduct, these individuals and/or entities create false email accounts using fictitious names in order to anonymously post false statements about Plaintiffs. They have no legitimate reason for their conduct.

26.    Among the *per se* defamatory statements currently located on the Websites and being disseminated throughout the world by the Website Defendants are the following:

- You are full of sh\*\*! You have been on other complaint sites regarding this **scam** company Houlihan/Smith. *See* http://whocalled.us/lookup/3124995900.

- "Once the scam was complete and Houlihan had all of our cash reserves and we couldn't afford to give them anymore to produce these pretty looking folders...they disappeared..." **Houlihan Scam** - 5 Jan 2009. *See* http://whocallsme.com/Phone-Number.aspx/3124995900.

- "**Absolute scam** and only sucker would fall for it." 6 Aug 2008, Crystal display, Delama City, Delaware, U.S.A. *See* http://800notes.com/Phone.aspx/1-312-499-5900/5.

- "looked it up and found out it was Holiahan (sic) and smith... They are like IPA out in Buffalo Grove... **Ripe (sic) off artists...**" Cocoa MC 20 - 27 Feb 2009. *See* http://800notes.com/Phone.aspx/1-312-499-5900.

- "I was stupid enough to take a job with this strong armed **scam company** that calls itself an investment banking advisory firm. ... **This company lies to its so called clients. It lies to it's (sic) employees**...An investment bank is typically filled with ivy league graduates and MBA's. This company is filled with people who can hardly get a job. ... **They scammed their clients at that firm and they are doing the same here.** BEWARE!!! I guarantee they will get sued numerous times for **scamming clients** for $30K to $100K for so called advisory work as a bait to get them to think they will get funded with debt or equity. Yeah right...." Former employee. *See* http://800notes.com/Phone.aspx/1-312-499-5900/2.

- "Houlihan clearly is a **scam**..." Not quite right - 5 May 2009. *See* http://800notes.com/Phone.aspx/1-312-499-5900/4.

- "... they were not in the business of doing anything other than **ripping us off**.... \* \* \* Thank you very much to the commentors on this site - you just saved my company a lot of money." Caitlin - 15 Jun 2009. *See* http://800notes.com/Phone.aspx/1-312-499-5900/8.

- "Sure it's an 'investment banking firm', but one of high repute? I think not. . . **This company is a joke** – ...." I used to work there too – 4 July 2008. *See* http//800notes.com/Phone.aspx/1-312-499-5900/4.

- "You provide a disservice to humanity, regardless of what company you work for. **You existence is sustained via corporate bribery and the blackmail of politicians...High repute? hahahahaha....**" Gigi, 14 Nov. 2008. *See* http//800notes.com/Phone.aspx/1-312-499-5900/4.

- "Houlihan Smith is just not right. They don't care about business relationships in a business that is all about people...." Just interviewed, 15 Jan 2009; *See* http//800notes.com/Phone.aspx/1-312-499-5900/7.

- "... a former senior associate who collected checks in the field for HS Advisors LLC was an ex-con who ran a commodity pool scam and bilked 25 investors out of $5 million and spent 51 months in a federal "condo". Rest Of The Story - 2 Feb 2010. *See* http://800notes.com/Phone.aspx/1-312-499-5900/9.

- "**This company is the biggest scam on the face of the earth and it is definitely a lawsuit waiting to happen.** In fact, I know they are being looked at. It's sad that [employee of Houlihan] seems like such a family guy is a scam artist. **[He] has no idea what he is talking about as far as valuations....[Houlihan will] deliver the report late and in horrible quality.... [An employee] is an ex-con for a scam involving commodities....**" Warning, 6 April 2010; *See* http//800notes.com/Phone.aspx/1-312-499-5900/9.

Attached hereto as Exhibits B through D are copies of the defamatory postings on each Website; **Exhibit B** contains postings on 800Notes.com; **Exhibit C,** Whocallsme.com; and **Exhibit D,** Whocalled.us.com (emphasis added).

27.     The statements in the postings attached as Exhibits B through D are patently false, harassing, and outrageous. *See* the Affidavits of Charles Botchway and Andrew Smith attached hereto as **Exhibits E and F,** respectively. None of the Plaintiffs, principals employees agents or representatives has consented in writing or otherwise to the use of their name, likeness, the Houlihan Marks, trademarks, marks, service marks or other intellectual property rights.

28.     This activity is ongoing. Many of these publications occurred as late as April 6, 2010, on which date one or more of the Jane and John Doe Defendants posted the *per se* defamatory and completely untrue statements attached hereto as Exhibits B through D accusing Plaintiffs and their principals, employees, agents and representatives on 800Notes.com and Whocallsme.com of criminal conduct:

8

29.     Plaintiffs are not now and never have been a "scam", "ripoff", "fraud", or "boiler room." Neither Plaintiffs nor any of their principals, employees, agents or representatives lie to customers, scam any individual or company, or otherwise engage in the conduct attributed to them in the postings attached hereto. None of Plaintiffs' principals, current or former employees, agents or representatives are "ex-cons" or have ever been accused or convicted of any criminal conduct. *See* Exhibits E and F.

30.     Equally troubling, these defamatory postings and false statements about Plaintiffs occupy some of the top search engine results for the search terms "Houlihan Smith" on the most popular search engines, such as Google and Yahoo.

31.     The owners and operators of the Websites are not mere passive forums or innocent bystanders in this regard. They profit from Plaintiffs' agony through, among other things, the increased traffic to their Websites resulting from the scandalous and outrageous nature of the comments appearing on their Websites. In order to increase the flow of "traffic" or visitors to the Websites, the Website Defendants or their owners and/or operators combine their own original content with each posting to ensure the false statements occupy or are associated with Plaintiffs on search results whenever an individual performs a search for "Houlihan Smith." This has the result of perpetuating the wrongful scheme to harm Plaintiffs and to ensure the false statements are disseminated throughout the internet and, consequently, the world.

32.     For example, none of the publications on Exhibits B through D use the word "fraud." Nevertheless, a search result for "Houlihan Smith fraud" on a search engine retrieves the postings on the Websites that are attached as Exhibits B through D. On information and belief, this is because once a posting is submitted to a Website, the Website Defendants provide their own content into the HTML, metatags, source code, buried code, search terms, keywords,

9

key terms, hit generating pages, or otherwise, such as the term "fraud", for the particular

webpage containing the report or comment. On information and belief, the Website Defendants

use and associate the term "fraud" with "Houlihan Smith" in the HTML script or otherwise in

order to direct search results for "Houlihan Smith fraud" to the Websites. It is only through the

Website Defendants' own original content that internet searches associate "Houlihan Smith"

with the word "fraud."

33. Further, each webpage contains an HTML script that is read by internet search

engines, such as Google or Yahoo. The owners of the Websites (such as Forte and Silva) have

exclusive control over the content of the HTML script for their webpage. Among other content,

the HTML script contains "metatags" that are designed for internet search engines to read.

34. One such metatag is the "title metatag," which provides a title for the particular

webpage. This title appears on the title bar of an internet browser program. On information and

belief, the Website Defendants and/or their operators create the title metatag for each webpage

on the Websites using derogatory terms such as "scam," "fraud", "ex-con", *etc.*

35. In addition to the title metatag, the Website Defendants and/or their operators use

information submitted by the anonymous individuals as part of the "description metatag" for

each webpage. Similar to the "title metatag," the description metatag appears in the HTML

script for the webpage, which is displayed in the two lines of text beneath the title for each

search result on search engines such as Google. For example, when Houlihan Smith is searched

on Google, the results page on Google displays the defamatory content of the postings as a result

of the Websites' use of the description and title metatags containing the defamatory content and

intellectual property rights of Plaintiffs in the HTML.

10

36. Further, on information and belief, the Website Defendants enter into agreements with entities, such as Google, that operate internet search engines to ensure the defamatory postings are associated with Plaintiffs' name and identities when searches are performed when an individual searches the internet for Plaintiffs or their principals, employees, agents or representatives who are identified by name on the Websites.

37. The combination of the defamatory comments in the anonymous postings, agreements with internet-search companies, and the original content provided by the Website Defendants and/or their operators results in the intentional, constant and repeated publication of the defamatory materials about Plaintiffs throughout the internet and, consequently, throughout the world, 24 hours a day, seven days a week.

38. The highly-charged, sensational words, such as "scam", "scam artists", "fraud" and "ex-con" appearing on the search results page have the intended effect of shocking any person who conducts an internet search for any business, such as Plaintiffs, unfortunate enough to be the victim of such comments posted on the Websites. The Website Defendants' intended consequence of using such sensational words, such as "scam", "scam artist", "ex-con", and "fraud" is to increase traffic to the Websites, which in turn has the effect of increasing their revenue through advertisements and otherwise. The Website Defendants solicit individuals to visit their Websites through this wrongful conduct for commercial gain.

39. Further, in order to facilitate the wrongful dissemination of postings on the Websites, including the defamatory postings about Houlihan and its principals, employees, agents or representatives that are at issue here, 800Notes and Whocallsme obtain an irrevocable license from whomever publishes a post, including individuals residing in Illinois. The Terms of Service Agreements for 800Notes and Whocallsme provide, in part:

11

> By posting Content to any public area of the Service, you automatically grant, and you represent and warrant that you have the right to grant, to [800Notes or whocallsme] an irrevocable, perpetual, non-exclusive, fully paid, worldwide license to use, copy, perform, display, and distribute said Content and to prepare derivative works of, or incorporate into other works, said Content, and to grant and authorize sublicenses of the foregoing.

Copies of the Terms of Service Agreements for 800Notes.com and Whocallsme.com are attached as **Exhibits G and H**, respectively. It is only through this license that the Website Defendants have the right to continually disseminate the statements on their Websites.

40.    The Website Defendants know the statements that are the subject of this action are false, yet they continue to disseminate the false statements throughout the world. They know Houlihan Smith owns a trademark, and its principals, employees, agents and representatives have the right to control their own publicity. Yet, they continue to publish the defamatory statements.

41.    Indeed, the mere fact that Houlihan Smith registered the Houlihan Marks with the U. S. Patent and Trademark Office provides the Website Defendants with at least constructive notice of Houlihan Smith's intellectual property rights. Plaintiffs exclusively and consistently identify the Houlihan Marks as registered trademarks in the provision of their services, as evidenced by use of the same on Houlihan Smith's website (houlihansmith.com), employee stationery, emails, and employee handbook, all reference the Houlihan Marks. Plaintiffs consistently use and protect their Marks and have done so since at least 1996.

42.    800Notes, Whocallsme, and Forte also know that the statements violate the "Terms of Service Agreements" between them and the individuals and/or entities that originally posted them. The "Terms of Service Agreements" for 800Notes and Whocallsme provides, in part:

> **Contribution of Content:** Much of the content of this website is provided by and is the responsibility of the person or people who made those postings. 800notes.com does not monitor the content and takes no responsibility for such content. However,

12

19

we reserve the right to delete any Content at any time without notifying the person from which such Content originated.

You agree that you will not post Content that:

- is known by you to be false, inaccurate or misleading
- is for purposes of spamming
- claims the identity, characteristics or qualifications of another person
- is unlawful, threatening, obscene, vulgar, pornographic, profane or indecent including any communication that constitutes (or encourages conduct that would constitute) a criminal offense, gives rise to civil liability or otherwise violates any local, state or federal law
- violates the copyright, trademark or other intellectual property rights
- contains links to viruses, worms or any items of a destructive nature
- for which you were compensated or granted any consideration by any third party

\* \* \*

*See* http://800notes.com/nb/tos.aspx (emphasis added); http://whocallsme.com/nb/tos.aspx

(emphasis added).

43.    The Terms of Service Agreements for 800Notes.com and Whocallsme.com

authorize the deletion or removal of the defamatory information, providing: "[W]e reserve the

right to delete any Content at any time without notifying the person from which such Content

originated." http://800notes.com/nb/tos.aspx and http://whocallsme.com/nb/tos.aspx.

44.    The Terms of Service Agreements further authorizes 800Notes and Whocallsme

to block the users from publishing any additional false and defamatory statements:

**Termination:** [The Website] reserves the right to immediately terminate your use of, or access to the Service if [the Website] decides at its sole discretion that you have breached this Agreement or any relevant law, rule or regulation or you have engaged in conduct that we consider to be inappropriate or unacceptable

http://800notes.com/nb/tos.aspx and http://whocallsme.com/nb/tos.aspx.

13

45.     On April 12, 2010, Plaintiffs informed the Website Defendants in writing that the
postings were false, defamatory and a violation of Plaintiffs' intellectual property rights,
demanding that they remove the information from the Websites and cease all additional uses
associated with the same. Copies of the April 12 demand letters are attached hereto as **Exhibits
I and J**. The Website Defendants refused, without any legitimate justification and in bad faith.
Their responses are attached hereto as **Exhibits K and L**.

46.     Despite having knowledge of the defamatory nature of the postings, knowledge of
the Plaintiffs' intellectual property rights and the right to remove to remove and/or block the
continued dissemination of these materials, Forte, Silva, 800Notes and Whocallsme have refused
to do so.

47.     Plaintiff Houlihan Smith is the registered owner of the Houlihan Marks. The
Houlihan Marks are well known and recognized both by individuals in the investment industry
and, as their use demonstrates, by the Jane and John Doe Defendants who post on the Websites.
Moreover, the Website Defendants' actions—creating metatags using the Houlihan Marks—
demonstrate that the Houlihan Marks are recognized by the Website Defendants themselves.

48.     By associating the Houlihan Marks with the term "fraud" in search engine results
on Yahoo.com and Google.com, the Website Defendants use the Houlihan Marks in commerce,
via their own original content, in order to attract hits to their own Websites while simultaneously
defaming, disparaging, and harming Plaintiffs. Plaintiffs have never authorized any of the
Defendants to use the trademark, or associate the trademark with nefarious conduct such as
fraud, scams, criminal activity or otherwise.

49.     The Website Defendants' conduct has the tendency to mislead individuals and
customers into falsely believing the statements are true or that the association of the wrongful

14

21

conduct is accurate. It is not. The Defendants' unauthorized use dilutes and tarnishes the distinctive qualities of the Houlihan Marks.

50.     These false statements and misuse of the Houlihan Marks and the individuals' right of publicity are so widely publicized by Defendants that Plaintiffs and their employees find themselves constantly having to explain and defend the false statements in their business and in their private and personal lives.

51.     They have caused lost professional and business opportunities for Plaintiffs, lost profits and revenue for Plaintiffs, lost good will, they are seriously harming their reputations in the community, as well as the reputations of the principals, employees, agents or representatives of Plaintiffs.

52.     The Website Defendants' practice of perpetuating the dissemination of these false statements (both through the creation of HTML script, association of the term "fraud" with Houlihan Smith, and refusing to remove the posts) has the effect of increasing the relevance of those reports to the Websites and increasing their revenue, and further has the effect of republishing the false statements.

53.     Any future (or continued) publication of the defamatory statements, misuse of the Houlihan Marks, and other intellectual property rights at issue here will cause harm and damage to Plaintiffs and their principals, employees, agents and representatives without reason or just cause.

## COUNT I
### DEFAMATION *PER SE AGAINST ALL DEFENDANTS*

54.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

15

55.     Jane and John Doe Defendants have published to third parties without authority or privilege the false statements detailed above, and other false statements, regarding Plaintiffs and their principals, employees, agents representatives with the malicious and wrongful attempt to harm Plaintiffs' business.

56.     Jane and John Doe Defendants have repeatedly published and re-published those statements *via* the internet and the Websites, all posted under false usernames.

57.     Jane and John Doe Defendants' false statements constitute defamation *per se* under all applicable laws because they falsely accuse Plaintiffs of committing crimes; suggest that Plaintiffs are a "scam," "scam artists," "ex-cons," operate a "boiler room," and other wrongful conduct; prejudice Plaintiffs in their business and profession; prejudice the individuals employed by Plaintiffs in their profession; and otherwise impute wrongful and criminal conduct to Plaintiffs and their principals, employees, agents and representatives in the operation of their business and professions.

58.     Jane and John Doe Defendants' false statements have damaged each Plaintiff by interfering with their business relationships, by damaging their reputations in their communities, by interfering with their business or prospective business relationships with persons concerned that some of the false statements might be true, and by harming Plaintiffs in their ability to hire new employees.

59.     The Website Defendants have engaged in defamatory conduct of their own because they have included their own original content to their Websites that affirmatively associates Plaintiffs with the term "fraud," even though no posting on the Websites uses that term. The Website Defendants also included the offensive, defamatory and untrue statements in the HTML in order to direct visitors to the Websites for commercial use.

16

60.    The Defendants' conduct has significantly harmed and damaged Plaintiffs and their principals, employees, agents and representatives. The harm and damage they are causing will continue into the future if not enjoined, leaving Plaintiffs with no remedy at all.

61.    The defamatory statements are not subject to an innocent construction nor protected by the First Amendment to the Constitution.

**WHEREFORE,** Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives;

(2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives; (3) A temporary, preliminary and permanent injunction blocking the publication on any of website operated by Defendants by the individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or

17

the intellectual property rights; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to which Plaintiffs are entitled.

**COUNT II**
**DEFAMATION *PER QUOD* AGAINST ALL DEFENDANTS**
**(IN THE ALTERNATIVE TO COUNT I)**

62.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

63.     To the extent the defamatory statements in Count I, or any of them, are not considered *per se* defamation, Plaintiffs bring this Count II for defamation *per quod* in the alternative to Count I and incorporate all allegations in Count I herein.

64.     In addition, the conduct of the Defendants with respect to the publication and continued publication of the defamatory comments is malicious and willful, all in an attempt to harm Plaintiffs and their principals, employees, agents and representatives.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives;

(2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all

18

25

statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all

of their principals, employees, agents or representatives; (3)  A temporary, preliminary and

permanent injunction blocking the publication on any of website operated by Defendants by the

individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A

temporary, preliminary and permanent injunction against the Website Defendants from

continuing to disseminate, publish, use or republish the defamatory statements and to remove

any and all reference to the defamatory statements from the Websites, including but not limited

to any use of names, words, designations or symbols consisting or otherwise similar to the

Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees,

agents, and representatives from any HTML text, buried code, metatags, search terms, keywords,

key terms, hit generating pages, or any other device used, intended, or likely to cause any

website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or

the intellectual property rights;  (5) An order compelling the Website Defendants to immediately

provide Plaintiffs with all information concerning the individuals and/or entities that have

published the defamatory materials, including their IP address, name, address, telephone number,

email address and any other information necessary to identify the individual and/or entity

responsible for the defamatory statements about Plaintiffs and their agents; (6)  An award of

compensatory damages in an amount to be proven at trial, but in no event less than $50,000

against all Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys'

fees; and (7) All other relief to which Plaintiffs are entitled.

19

## COUNT III
### VIOLATION OF THE ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT; INJURY TO BUSINESS REPUTATION; DILUTION, 765 ILCS 1036/1 *ET SEQ.* AGAINST ALL DEFENDANTS

65.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

66.     By reason of Plaintiffs' extensive labor, efforts, advertising and exclusive and consistent use of the Houlihan Marks, trade name, and service mark in connection with Plaintiffs' services since at least 1996, they have become famous and distinctive throughout the state of Illinois.

67.     Plaintiffs have advertised their services in connection with the Houlihan Marks throughout the State of Illinois through the internet, electronic mailings, printed materials, and otherwise.

68.     Plaintiffs have advertised and used the Houlihan Marks in all aspects of their business, including investment banking, valuations, fairness and solvency opinions, solvency and capital adequacy opinions, securities, corporate governance, private placement, asset management, and other related financial channels and trades consistently and exclusively since at least 1996.  They are not aware of the use of the same or similar mark by any third parties, unless otherwise stated in this Complaint.

69.     The Houlihan Marks are registered with the United States Patent and Trademark Office and on the principal register.

70.     The Defendants' willful and unauthorized use of the Houlihan Marks in commerce, as set forth above, which occurred after they acquired fame and distinctiveness, have diluted and tarnished and will, unless restrained, continue to dilute and tarnish the distinctive

20

quality of the Houlihan Marks by destroying the association between them and Plaintiffs' reputable investment banking, financial and other services.

71.     The Defendants are and continue to trade on Plaintiffs' reputation and to cause dilution and tarnishment of the Houlihan Marks with malice and without authorization.

72.     The Defendants' actions are willful and in bad faith, in violation of the Illinois Trademark Registration and Protection Act. *See* 765 ILCS 1036/65; *Injury to Business Reputation, Dilution.*

73.     The Defendants' conduct has directly and proximately caused Plaintiffs to suffer irreparable damage and will, unless enjoined by this Court, continue to cause Plaintiffs to suffer damages that cannot be adequately remedied at law.

74.     The Website Defendants are not using, reproducing, copying, or otherwise misappropriating the Houlihan Marks or mark in comparative commercial advertising for non-commercial use, or in any form of news reporting or news commentary.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from using, reproducing, copying, or otherwise associating any of the statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives at issue in this action with the Houlihan Marks or Mark;

(2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives, from all Websites that use, reproduce, copy, or otherwise associate the Houlihan Marks or mark in connection with the defamatory

21

postings; (3) A temporary, preliminary and permanent injunction blocking the continued

publication, use, reproduction, copying, or association of the defamatory materials with the

Houlihan Marks or mark on any of website operated by the Website Defendants; (4) A

temporary, preliminary and permanent injunction against the Website Defendants from

continuing to disseminate, publish, use or republish the defamatory statements and to remove

any and all reference to the defamatory statements from the Websites, including but not limited

to any use of names, words, designations or symbols consisting or otherwise similar to the

Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees,

agents, and representatives from any HTML text, buried code, metatags, search terms, keywords,

key terms, hit generating pages, or any other device used, intended, or likely to cause any

website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or

the intellectual property rights; (5) Judgment in favor of Plaintiffs and against the Website

Defendants, jointly and severally, in an amount not to exceed three times the damage to

Plaintiffs, and their reasonable attorneys' fees, but in no event less than $50,000, plus punitive

damages, interest, costs and attorneys' fees; and (6) All other relief to which Plaintiffs are

entitled.

## COUNT IV
### VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT,
### 765 ILCS 1075/1, *ET SEQ.*, AGAINST THE WEBSITE DEFENDANTS

75.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set

forth herein.

76.     The principals, employees, agents, and representatives of Plaintiffs have the

exclusive and inherent right to control the use and commercial use of their name, identity, and

likeness. The Right to Publicity Act is a law pertaining to intellectual property.

22

77. In Illinois, an individual's right of publicity is governed by the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* (the "RPA"). The RPA defines "Identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. The term "Name" as used in the RPA means "the actual name or other name by which an individual is known that is intended to identify that individual." 765 ILCS 1075/5.

78. The RPA limits the right of anyone to use an individual's identity, providing, in part: (a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons...." 765 ILCS 1075/30.

79. The right of publicity of the individuals identified in the postings on the Websites and used without permission by the Website Defendants constitutes a property right under the Illinois Right to Publicity Act, 765 ILCS 1075/1, *et seq.*

80. The Website Defendants' use of the identities of Plaintiffs' principals, employees, agents, and representatives in association with the defamatory and disparaging statements on the websites for commercial purposes and without their consent or authorization.

81. The Website Defendants' impermissible use has placed, and continue to place, Plaintiffs' principals, employees, agents or representatives in a false light before the public, harming their reputations and good will, personally and professionally.

82. The Defendants' false statements are highly offensive to reasonable persons.

23

83.    The Website Defendants have and continue to violate the right of publicity of Plaintiffs' principals, employees, agents and representatives who are specifically named in the Websites. They do so 24 hours a day, seven days a week, throughout the world.

84.    The Website Defendants have, without consent of Plaintiffs' principals, agents, employees and representatives, appropriated to their own use commercial or benefit the name or likeness of Plaintiffs' principals, agents, employees and representatives identified in the Websites.

85.    In addition to the personal and substantial harm caused to these individuals because of the Website Defendants' malicious use of the individuals' right of publicity, they have also suffered and continue to suffer harm in the practice of their professions and businesses.

86.    The RPA entitles Plaintiffs to injunctive relief against the Website Defendants' continued unlawful use of the identities and names of the principals, employees, agents, and representatives identified on the Websites. 765 ILCS 1075/50.

87.    The RPA entitles Plaintiffs as the representatives of their principals, employees, agents, and representatives to an award of damages, punitive damages, reasonable attorneys' fees and costs. 765 ILCS 1075/40 and 55.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing, republishing, using, reproducing, copying or otherwise taking advantage of the right of publicity of Plaintiffs' principals, employees, agents and representatives identified by name or implication on the Websites; (2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements that name or otherwise identify any

24

principals, employees, agents or representatives of Plaintiffs from all Websites;  (3)  A temporary, preliminary and permanent injunction barring the Website Defendants from continuing to publish any statements on their Websites that name or otherwise identify Plaintiffs' principals, employees, agents or representatives;  (4)  A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights;  (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents;  (6)  An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000, against the Website Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7)  All other relief to which Plaintiffs are entitled.

## COUNT V
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES AGAINST THE DEFENDANTS

88.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

25

89.     The Jane and John Doe Defendants' conduct detailed above, and on information and belief their yet-undiscovered conduct, is extreme and outrageous.

90.     Through the intentional conduct described in this Verified Complaint, the Jane and John Doe Defendants intend to inflict severe harm upon Plaintiffs in order to inhibit third-parties and potential customers of Plaintiffs from using their services, and are further aware that there is at least a high probability that their conduct will cause third parties and potential customers to cease or avoid doing business with Plaintiffs.

91.     Plaintiffs' business relationships constitute a property interest and, as such, are entitled to protection from unjustified tampering by another.

92.     Plaintiffs have a reasonable expectancy of entering into a valid business relationship with entities and individuals who have read or will read the defamatory postings on the Websites.

93.     The Jane and John Doe Defendants are aware of Plaintiffs' expectancy of entering into a valid business relationship with such entities and individuals.

94.     The Jane and John Doe Defendants' intentional, reckless and unjustified interference has prevented and will prevent Houlihan from realizing upon its business expectancy.

95.     Plaintiffs have been damaged as a direct result of the conduct of the Jane and John Doe Defendants.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction as set forth in Count I; (2) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials,

including their IP address, name, address, telephone number, email address and any other

information necessary to identify the individual and/or entity responsible for the defamatory

statements about Plaintiffs and their agents; (3) An award of compensatory damages in an

amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and

severally, plus punitive damages, interest, and costs; and (4) All other relief to which Plaintiffs

are entitled.

**COUNT VI**
**VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE**
**TRADE PRACTICES ACT, 815 ILCS 510/1 *ET SEQ.*, AGAINST ALL DEFENDANTS**

96.     Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set

forth herein.

97.     Defendants have violated the Illinois Uniform Deceptive Trade Practices Act, 815

ILCS 510/2, because: (a) the postings disparage the services and business of Houlihan by false

and misleading representations of fact; (b) the postings falsely represent that Houlihan's services

are of a particular standard or quality; and (c) the Defendants have otherwise engaged in conduct

which has created a likelihood of confusion or misunderstanding related to Houlihan's services.

815 ILCS 510/2(a).

98.     The Jane and John Doe Defendants have and continue to make, publish and

disseminate false, misleading and/or disparaging postings regarding Houlihan's services and

business throughout the world.

99.     On information and belief, the false, misleading and/or disparaging postings were

made by the Jane and John Doe Defendants in the course of his/her/its business, vocation or

occupation.

100.    The Website Defendants have and continue to make, publish and disseminate

false, misleading and/or disparaging postings regarding Houlihan's services and business

27

34

through the world by including their own original content to "metatags" contained in the HTML script which was authored by them and/or their operators.

101. Further, the Website Defendants have and continue to maliciously publish and disseminate the false, misleading and/or disparaging postings of the Jane and John Doe Defendants regarding Houlihan's services and business throughout the world.

102. The Website Defendants have been informed and are aware of the deceptive character of the postings.

103. The Website Defendants have and continue to make, publish and disseminate these postings in the course of their business, vocation or occupation.

104. The continued dissemination of the false, misleading and/or disparaging materials by the Defendants will harm Plaintiffs and their principals, employees, agents and representatives in the operation of their business and provision of services. Plaintiffs have already incurred significant damages as a result of the statements and there exists a more than reasonable probability that the damages will continue or increase as a result of the Defendants' continued making, publication and dissemination of the false statements.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them:

(1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives;

(2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives, from all websites where they have

28

posted such statements; (3) A temporary, preliminary and permanent injunction blocking the

publication on any of website operated by Defendants by the individuals and/or entities

responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary

and permanent injunction against the Website Defendants from continuing to disseminate,

publish, use or republish the defamatory statements and to remove any and all reference to the

defamatory statements from the Websites, including but not limited to any use of names, words,

designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service

marks, names and identities of Plaintiff's principals, employees, agents, and representatives from

any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages,

or any other device used, intended, or likely to cause any website of Defendants to associate the

Plaintiffs with the defamatory materials at issue here or the intellectual property rights;  (5) An

order compelling the Website Defendants to immediately provide Plaintiffs with all information

concerning the individuals and/or entities that have published the defamatory materials,

including their IP address, name, address, telephone number, email address and any other

information necessary to identify the individual and/or entity responsible for the defamatory

statements about Plaintiffs and their agents; (6) An award of compensatory damages in an

amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and

severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to

which Plaintiffs are entitled.

## COUNT VII
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 505/1 *ET SEQ.*, AGAINST ALL DEFENDANTS.

105.    Plaintiffs incorporate and re-allege paragraphs 1 through 53, and in Count VI

paragraphs 97 through 104, as though fully set forth herein.

29

106.     The Defendants' conduct that violates the Illinois Uniform Deceptive Trade Practices Act also gives rise to a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, which provides that it is unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act."..." 815 ILCS 505/2.

107.     Houlihan is entitled to actual and punitive damages, injunctive relief and, if it prevails, reasonable attorneys' fees. 815 ILCS 505/10a(a) and (c) (emphasis added).

WHEREFORE, Plaintiffs respectfully pray that the Court grant them: (1) A temporary, preliminary and permanent injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives; (2) A temporary, preliminary and permanent injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all of their principals, employees, agents or representatives, from all websites where they have posted such statements; (3) A temporary, preliminary and permanent injunction blocking the publication on any of website operated by Defendants by the individuals and/or entities responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary and permanent injunction against the Website Defendants from continuing to disseminate,

30

publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights;  (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6)  An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, costs and attorneys' fees; and (7) All other relief to which Plaintiffs are entitled.

## COUNT VIII
## COMMON LAW MISAPPROPRIATION OF INTELLECTUAL PROPERTY RIGHTS
## AGAINST ALL DEFENDANTS

108.   Plaintiffs incorporate and re-allege paragraphs 1 through 53 as though fully set forth herein.

109.   Defendants have misappropriated the Plaintiffs' right to control their name and reputation by making, publishing and disseminating statements that (a) disparage the services and business of Houlihan by false and misleading representations of fact; and (b) misappropriate the Houlihan Mark.

31

110.    The Plaintiffs have a property right in the exclusive use of the Houlihan Mark, in their own reputation, and in their current and future clients and business.

111.    The Jane and John Doe Defendants have and continue to make, publish and disseminate false, misleading and/or disparaging postings regarding Houlihan's services and business throughout the world.

112.    In doing so, the Jane and John Defendants have misappropriated the Houlihan Mark and the Plaintiffs' reputation, and severely and negatively impacted the ability of the Plaintiffs to utilize both in retaining and attracting clients and business.

113.    The Website Defendants have and continue to make, publish and disseminate false, misleading and/or disparaging postings regarding Houlihan's services and business through the world by including their own original content to "metatags" contained in the HTML script which was authored by them and/or their operators.

114.    Further, the Website Defendants have and continue to publish and disseminate the false, misleading and/or disparaging postings of the Jane and John Doe Defendants regarding Houlihan's services and business through the world.

115.    The Website Defendants' actions have been undertaken in an effort to increase traffic to their own Websites, and hence to increase advertising and other revenue.

116.    In doing so, the Website Defendants have misappropriated the Houlihan Mark and the Plaintiffs' reputation, and severely and negatively impacted the ability of the Plaintiffs to utilize both in retaining and attracting clients and business.

117.    The continued dissemination of the false, misleading and/or disparaging materials by the Defendants will harm Plaintiffs and their principals, employees, agents and representatives in the operation of their business and provision of services. Plaintiffs have

32

already incurred significant damages as a result of the statements and there exists a more than

reasonable probability that the damages will continue or increase as a result of the Defendants'

continued making, publication and dissemination of the false statements.

WHEREFORE, Plaintiffs respectfully pray that the Court grant them: (1) A temporary,

preliminary and permanent injunction prohibiting all Defendants, their agents, servants,

employees and/or all persons acting in concert or participation with them, or any of them, from

publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith

Advisors, LLC, and all of their principals, employees, agents or representatives; (2) A

temporary, preliminary and permanent injunction ordering all Defendants to remove all

statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and all

of their principals, employees, agents or representatives, from all websites where they have

posted such statements; (3) A temporary, preliminary and permanent injunction blocking the

publication on any of website operated by Defendants by the individuals and/or entities

responsible for the defamatory publications at issue in this case; (4) A temporary, preliminary

and permanent injunction against the Website Defendants from continuing to disseminate,

publish, use or republish the defamatory statements and to remove any and all reference to the

defamatory statements from the Websites, including but not limited to any use of names, words,

designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service

marks, names and identities of Plaintiff's principals, employees, agents, and representatives from

any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages,

or any other device used, intended, or likely to cause any website of Defendants to associate the

Plaintiffs with the defamatory materials at issue here or the intellectual property rights; (5) An

order compelling the Website Defendants to immediately provide Plaintiffs with all information

concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents; (6) An award of compensatory damages in an amount to be proven at trial, but in no event less than $50,000 against all Defendants, jointly and severally, plus punitive damages, interest, and costs; and (7) All other relief to which Plaintiffs are entitled.

**COUNT IX**
**INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS**

118.    Plaintiffs incorporate and re-allege paragraphs 1 through 117 as though fully set forth herein.

119.    Plaintiffs are entitled to an injunction ordering the Defendants to remove, or block access to, all defamatory postings from the Websites.

120.    Plaintiffs have a clearly ascertainable right in need of protection because it has the right to operate its company free from unlawful interference, defamatory and other unlawfully derogatory postings.

121.    Neither Plaintiffs nor their principals, employees, agents or representatives have an adequate remedy at law because no monetary award can remedy the significant harm the defamatory postings have already caused Plaintiffs and continue to cause Plaintiffs every day the defamatory postings remain on the Websites.  Plaintiffs do not have a complete, clear, practical and efficient remedy.

122.    Plaintiffs have a likelihood of success on the merits of their claim for the statements constitute defamation per se as alleged above and the Website Defendants' conduct

34

41

aiding and abetting the publication and continued dissemination of the defamatory comments does not insulate it from liability or entry of injunctive relief.

123.    The balance of harms favors Plaintiff and its principals, employees, agents and representatives because they are suffering immeasurable harm as a result of the postings and they do not have the right to confront the malcontents because of the anonymous nature of the postings on the Websites.

124.    There is no harm to the Jane and John Doe Defendants as they are not privilege or otherwise authorized to publish defamatory statements about Houlihan, its principals, employees, agents or representatives.  They do not enjoy any First Amendment rights to disseminate defamatory materials throughout the world.

125.    The Website Defendants also suffer no harm or prejudice.  They have the right to remove or block access to the defamatory materials per the Terms of Service Agreements. Further, the cannot be held liable for the deletion or removal of harassing information, such as set forth in the postings at issue here.

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief: (1) In addition to the relief sought in Counts I through VIII, a temporary, preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc, Houlihan Smith Advisors, LLC, and any of their principals, employees, agents or representatives; (2) An order requiring Defendants to remove all statements regarding Houlihan Smith & Company, Inc., Houlihan Smith Advisors, LLC, and any of their principals, employees, agents or representatives from all websites where Defendants have posted such statements; (3) An order to third party websites where Defendants have posted

35

their defamatory statements that all such material be taken down immediately, that all accounts

controlled by Defendants be deactivated, and that those third parties take reasonable, available

steps to prevent Defendants from posting further statements; and (4) All other relief to which

Plaintiff is entitled.

HOULIHAN SMITH & COMPANY, INC.®
AND HOULIHAN SMITH ADVISORS, LLC

By: _____
        One of Their Attorneys

Richard P. Darke
Rosanne Ciambrone
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6700
(312) 499-6701 (fax)
Firm Id. No.: 38820

36

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to those matters stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Andrew Smith
PRESIDENT

DM1\2152257.4

## SECTION 1-109 VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to those matters stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Charles-Botchway

DMEP2149948v2

# EXHIBITS

## INDEX TO EXHIBITS

A     HOULIHAN'S TRADEMARK REGISTRATIONS

B     800NOTES POSTINGS

C     WHOCALLSME POSTINGS

D     WHOCALLED.US POSTINGS

E     CHARLES BOTCHWAY AFFIDAVIT

F     ANDREW SMITH AFFIDAVIT

G     SERVICE AGREEMENT TERMS FOR 800NOTES

H     SERVICE AGREEMENT TERMS FOR WHOCALLSME

I     PLAINTIFFS' 4/12/10 LETTER TO JULIA FORTE

J     PLAINTIFFS' 4/12/10 LETTER TO JAMON SILVA

K     FORTE 4/13/10 RESPONSE

L     SILVA 4/13/10 RESPONSE



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri Apr 9 04:04:15 EDT 2010*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout Please logout when you are done to release system resources allocated for you.

Start List At:        OR Jump to record:        **Record 1 out of 2**

TARR Status | ASSIGN Status | TDR | TTAB Status ( *Use the "Back" button of the Internet Browser to return to TESS)*

# HOULIHAN SMITH & COMPANY INC.

| | |
|---|---|
| Word Mark | HOULIHAN SMITH & COMPANY INC. |
| Goods and Services | IC 035. US 100 101 102. G & S: Merger and acquisition advisory services. FIRST USE: 19960901. FIRST USE IN COMMERCE: 19960901 |
| | IC 036. US 100 101 102. G & S: Investment banking; Restructuring services, namely, financial risk management; Private placement services, namely, financial management; Financial opinion services, namely, financial consultation. FIRST USE: 19960901. FIRST USE IN COMMERCE: 19960901 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Trademark Search Facility Classification Code | NOTATION-SYMBOLS Notation Symbols such as Non-Latin characters,punctuation and mathematical signs,zodiac signs,prescription marks |
| Serial Number | 76674612 |
| Filing Date | March 26, 2007 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | December 18, 2007 |
| Registration Number | 3390591 |
| Registration Date | March 4, 2008 |
| Owner | (REGISTRANT) HOULIHAN SMITH & COMPANY INC. CORPORATION NEVADA 105 West Madison, Suite 1500 Chicago ILLINOIS 60602 |
| Attorney of Record | Julian R. Warner |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPANY INC." APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |

**EXHIBIT**

*A*

4/9/2010

Trademark Electronic Search System (TESS)                      Page 2 of 2

| Live/Dead Indicator | LIVE |

TESS HOME  NEW USER  STRUCTURED  FREE FORM  BROWSE DICT  SEARCH OG  TOP  HELP  PREV LIST  CURR LIST  NEXT LIST
FIRST DOC  PREV DOC  NEXT DOC  LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Trademark Electronic Search System (TESS)                    Page 1 of 2



Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri Apr 9 04:04:15 EDT 2010*

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:          OR  Jump  to record:       **Record 2 out of 2**

  *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| Word Mark | H HOULIHAN SMITH & COMPANY INC. |
| Goods and Services | IC 035. US 100 101 102. G & S: Investment banking, namely, merger and acquisition advisory services. FIRST USE: 19960901. FIRST USE IN COMMERCE: 19960901 |
| | IC 036. US 100 101 102. G & S: Investment banking; Restructuring services, namely, financial risk management; Private placement services, namely, financial management; Financial opinion services, namely, financial consultation. FIRST USE: 19960901. FIRST USE IN COMMERCE: 19960901 |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 26.11.02 - Plain single line rectangles; Rectangles (single line) |
| Trademark Search Facility Classification Code | LETS-1 H A single letter, multiples of a single letter or in combination with a design NOTATION-SYMBOLS Notation Symbols such as Non-Latin characters,punctuation and mathematical signs,zodiac signs,prescription marks SHAPES-GEOMETRIC Geometric figures and solids including squares, rectangles, quadrilaterals and polygons |
| Serial Number | 76674613 |
| Filing Date | March 26, 2007 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1A |

Trademark Electronic Search System (TESS)                                    Page 2 of 2

| | |
|---|---|
| Published for Opposition | December 11, 2007 |
| Registration Number | 3387276 |
| Registration Date | February 26, 2008 |
| Owner | (REGISTRANT) Houlihan Smith & Company Inc. CORPORATION NEVADA 105 West Madison, Suite 1500 Chicago ILLINOIS 60602 |
| Attorney of Record | Julian R. Warner |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPANY INC." APART FROM THE MARK AS SHOWN |
| Description of Mark | Color is not claimed as a feature of the mark. |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   Top   HELP   PREV LIST   CURR LIST
NEXT LIST   FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Ah yes, same old story - John Hamilton called and asked for my boss by his first name, as though they are old friends. Usually I just tell people like this (who I do not recognize, when I know 99% of my boss' contacts) that he's not in, but I was off my game this morning. Happily, it turned out he really HAD stepped out of the office, so I miraculously didn't put this fella through. When I said his name to the boss, "oh, John Hamilton called for you..." I got the "confused" face, so I googled his name and phone number, and of course, got this site. Arg. Anyway, unprofessional tactics - where do they think this will get them? My boss is actually a very nice man, and if I had put John H. through, my boss would have humored him for a few minutes, and then firmly ended the conversation. Why must these jokers waste our time?

*Caller: Houlihan*

Reply | |


**Warning**
6 Apr 2010

This company is the biggest scam on the face of the earth and it is definitely a lawsuit waiting to happen. In fact, I know they are being looked at. It's sad that a man, Andy Smith, who seems like such a family guy is a scam artist. He has no clue what he is talking about as far as valuations. They hire kids to do the reports and if you are given a quote, don't believe it. They will find a way to squeeze more money out of you. They charge $2500/cusip and they've valued those cusip's a million times. They cut/paste and receive $20,000 for something that took a half hour. If a company asks Houlihan if they provide a certain service and they have never done it, they will tell you they have, try to figure it out, deliver the report late and in horrible quality. Auditors have not accepted these reports and the company is forced to spend more money. Charles Botchway is an ex-con for a scam involving commodities. Check out their website. That's why he is not listed under the professionals tab. They paid Rip Off report a lot of money to remove all the complaints. And everything I read about the "boiler room" is true. They pass around folders of companies and don't put the phone down. They are trained to be rude to administrative assistants and they will get the wrath of charles if not. They are verbally abusive to their employees. Both the 3rd floor and 15th floors are scams. DO NOT TRUST THEM WITH YOUR MONEY!!! I can't wait for the day they finally get busted.  It won't be too much longer I can assure you.

*Caller: Houlihan Smith*

Reply | |


**Jack**
12 Apr 2010

Houlihan is an outstanding company.  Any reports that is anything but an outstanding company are entirely untrue.

*Caller: 3124995900*

Reply | |


A grown-up replies to Jack
12 Apr 2010

Good try at putting a complete sentence together...next thing you know you will be able to recite the alphabet...without notes!!!

Reply | |

1 2 3 4 5 6 7 8 [9]


Report a phone call from 312-499-5900:

Your Name *

Your name or nickname as you would like it to appear in the title of your post.

Message *


Caller Company

The company that called you

Call Type          Unknown

**EXHIBIT B**

phone however and the caller hears a male voice, they seem to be thrown off a little. Sad to say most of them expect that those that answer telephone at an organization are not only low-level employees, but also female.

It is very easy to deal with these types of calls.

1) If you don't recognize the telephone number, as soon as you pick up, type their telephone number into a Google search. If a forum such as this shows up, be polite, but get off the call a.s.a.p. Then, take the telephone number, place it into your telephone directory as Do Not Answer. If you can't do that, then start a list with telephone numbers, names, notes, etc. This will help you screen the calls better in the future.

2) If you don't find a forum such as this, continue to be polite and listen to the caller.

3) Ask them for their name, company and nature of their business.

4) Ask them to "please hold" as if you are going to transfer them, but instead, put them on hold. Listen to see if you hear anything that could clue you into if the call is a sales pitch, etc.

5) Come back to the line, as if you had them on hold, let them know the person they are calling for his not available and ask them to take a message. If it is a sales call and they really don't want to deal with you, they will say they don't have a message, or something along those lines.

6) If they are rude, pushy, etc. at any point, call your position into question, ask for your name and position, anything like this, continue to be polite as you disconnect the call.

6) If they person calls back, apologize for the call being disconnected (never admit you did it) and offer to transfer them to the person they are seeking "right away" and don't forget to apologize. Then, as nicely as you did before, hang up.

Eventually, they will get the point. By being polite, you are not in any danger of upsetting those individuals who are being asked for when the caller contacts you and there is nothing that can show that you didn't do what you said you were doing, the phone system must be on the fritz or something.

Bottom line, you are the gatekeeper, you are the eyes and ears of the individuals you support. If people can easily make it past you and take up precious time for decisions makers in your organization, trust me, you will not be around for long. Letting calls like these through can be a direct reflection upon your abilities to do your job.

Whenever you start a new organization, take on a new role, have a new individual join the team you support, etc., come right out and ask them how they would like you to handle sales calls that come into the office for them. Most of the time, they will tell you to either take a message, place the person into voicemail or vet the call further and bring the information to them as the caller is on hold. This will also gain you quick respect as it shows you are committed to supporting those on your team above and beyond the roles and responsibilities of your position (unless of course your job description specifically says you have to screen calls, etc.).

Yes, we may be administrators, but what most people don't realize is that we are the secretaries back during the era when Working Nine To Five was made. We typically are highly capable, educated, seasoned professionals who know what we are doing and do our jobs very well. We are typically at the office earlier than we are expected to be, leave later than expected, on call at night when we have a stranded traveler or emergency to deal with, most likely the first person to be approached for guidance on company policy, process, etc. We are hired to be the gatekeepers and these days, more and more organizations are realizing our value and what we have to contribute to the organization.

Don't allow others to downplay your role, make fun of your position and treat you like a second-class citizen. You don't need to be rude in kind though, always take the high road, but be assertive and most of all, be consistent.

Good luck.

*Caller: Houlihan Smith*
*Call Type: Telemarketer*

Reply

 **Former Employee** replies to <u>Office Manager (15+ yrs. exp.)</u>
13 Mar 2010

You have just articulated with great professional eloquence, the difference between a seasoned and authentic professional from the inexperienced and scripted robots that Houlihan Smith Advisors LLC, literally hires off the street.

You do get what you pay for.

Pay nothing much and you get what the 3rd floor produces...vile first impressions with zero credibility.

Good hard working kids for the most part who are turned into liars and beggars.

It is a real shame but that's what happens when the almighty dollar controls everything...even basic human dignity.

Reply

 **Exec Assistant**
5 Apr 2010

**Shippy**
28 Jan 2010

1-26-10 I just received the 2nd call from Jacob at Houlihan Smith, he was everything bad mentioned above. I work directly for the President of the Company and I would not be on his good side if I allowed rude callers such as "Jacob" beyond my desk. I don't understand why there isn't something that we can do to stop these calls? It appears there are enough of us who have been irritated by them, why don't we call them continually, daily and be rude and see how they like it?

*Caller: Houlihan Smith*

Reply



**Admin Assistant**
27 Jan 2010

Received a call. Yes pushy, good sales people are. I did not put them through but they did not get irate or swear. I took a message (name, number, company, nothing more) which I will pass on.

*Caller: Houlihan Hernandez*

Reply



**Jacksonville, FL**
1 Feb 2010

Houlihan & Smith just called and ask for the president of our company by his first name. I asked if I could take a message, he just kept repeating "is he going to be in today". I said I could probably get ahold of him if he told me the purpose of the call. He did not. I told him we do not take solication phone calls. He said it wasn't. He hung up

*Caller ID: 312-499-5900*
*Caller: Houlihan & Smith*
*Call Type: Telemarketer*

Reply



**Rest Of The Story**
2 Feb 2010

There are 2 Houlihan Smith entities...Houlihan Smith & Co. is a legitimate, regulated mid-market investment banking firm. "Houlihan Smith Advisors LLC" is the nightmare being described and the boiler room on the 3rd floor is kept intentionally separate and away from the ivory tower real headquarters upstairs in the leased corporate headquarters in Chicago. Concerning background checks...indeed...a former senior associate who collected checks in the field for HS Advisors LLC was an ex-con who ran a commodity pool scam and bilked 25 investors out of $5 million and spent 51 months in a federal "condo".

Everything else reported from the others here is true...very true...I know I worked for them.

As the late Paul Harvey said..."now you know the rest of the story".

Reply



**Aaron**
1 Mar 2010

Same as above really...they call and ask for the CEO by first name only (big mistake!). I always put the caller to voicemail. They call at least 4-5 times a week. They are persistent though, they've been trying to get through for months.

*Caller: Houlihan Smith*
*Call Type: Telemarketer*

Reply



**Pam**
3 Mar 2010

Houlihan Smith called twice today wanting to talk to me about raising capital for my company. I told them I wasn't interested in talking to them about my finances. The immediately called back after I terminated the call. I told them I wasn't interested and hung up again. Who are these people?

*Caller: Houlihan Smith*

Reply



**Office Manager (15+ yrs. exp.)**
12 Mar 2010

I am an Office Manager with 15+ years of experience in supporting C-level executives and members of several BODs within Fortune 100 companies. I too get calls from this organization and the other administrators just seem to get flustered and upset when the callers treat them rude. When I answer the

1-312-499-5900 / 13124995900

**800Notes** (Directory of UNKNOWN Callers)

312-499-5900

Did you get a call from 312-499-5900? Read the posts below to find out details about this number. Also report unwanted calls to help identify who is using this phone number.

Comments about 3124995900 number:

**mandy - 25 Oct 2007**                    Rating: +6

Push-ie sob. Keeps wanting to talk to my boss and its my job to keep weirdos away from my boss. This guy is very rude and has called 3 times since I have been working here. I give his phone number out to all my enemies and pricks at the bars.

Mandy

Caller ID: hoolihan smith
Caller: hoolihan something
Caller Type: Telemarketer

Reply

**AP - 2 Oct 2008**                    Rating: -16

Hey learn how to spell idiot! It's Houlihan, not hoolihan, and there are also grade school level spelling mistakes in your description. I was an executive at that company before selling my company stock back to the company for a little under $9,000,000 to go and pursue my passion of racing Italian sports cars. So it looks like our little company did something well. Sounds like you have not been very successful in the realationship department either if you are at bars getting picked up by retards. Mandy you should really use spell check and possibly GET A LIFE!

Reply

**Paul Johnston - 17 Oct 2008**                    Rating: +6

and your name would be ????? It's easy to throw trash around behind a keyboard.

Reply

**Teresa Williams - 23 Oct 2008**                    Rating: +6

Not everyone is a great speller or a computer expert. Does it really make you feel that superior to insult people like Mandy and not only insult them, but stomp, kick, and spit on them as well. Maybe you should spend some time on self improvement and relationship building instead of posting online. I suggest you start with the book Conversation Styles by Deborah Tannen. (And no, I did NOT use spell check)

Reply

**Gatekeeper from Hell - 16 Jan 2009**                    Rating: +6

No YOU get a REAL company so you can be a big boy and wear big boy pants and not just talk about your new lollipop you purchased with your $9mil SCAM

Reply

**Spelling - 27 Feb 2009**                    Rating: +6

AP——You just confirmed all of what we were saying—RUDE!! And who really cares about spell check!! This is a site about phone numbers!! Not the national spelling bee!! And I'm thinking you should maybe use spell check before you try to down someone——realationship??? What are those are they the same as relationships???

Reply

**Sam F - 27 Feb 2009**                    Rating: +6

Yeah, I saw that tool Trying to down someone for misspelling words, then he does the exact same thing! What an idiot! He's probably bankrupt, using a computer out of a public library, crying because he caught his wife sleeping with a big black guy like me! Loser

Reply

**jack ass - 12 May 2009**                    Rating: 0

You must be the one who called us, yeah you got 9,000,000 dick for your a***

Reply

**PU - 19 Jun 2009**                    Rating: 0

I know how to spell "idiot." Perhaps you should learn to punctuate.

Reply

**Compliance - 30 Oct 2007**                    Rating: -16

HOULIHAN SMITH & COMPANY INC. is a specialized investment banking firm that provides financial advisory and financing services to public and private businesses. Founded in 1996, Houlihan is recognized as a leading provider of financial opinions, financing, merger and acquisitions advisory, and other corporate advisory services.

The Houlihan name is synonymous with deal-making expertise and leadership in valuation and fairness issues. As a licensed and regulated company Houlihan receives referrals from attorneys, CPA's, lenders, investors and clients. As a matter of confidentiality Houlihan will not discuss the nature of the referral with anyone other than the referred business owner's.

**Site Menu**
- Homepage
- News
- Articles
- Videos
- Contact Us

**Search Phone Number**

[Search]

For example, 777-777-7777

**Latest News**
- Vision Media Sues 800notes
- This Week Roundup: New in Phone Scams (Jan. 24)
- FDA Warn Consumers About Phone Scam to Collect Fake Fines
- Toronto Telemarketing Firm Fined $15M For Business Directory Scam
- This Week Roundup: New in Phone Scams (Dec. 11)

**Latest Articles**
- 10 Ways You Can Be Phone Scammed
- 9 Things To Do When Your Identity Stolen
- Harassing calls from a debt collector? Here is what you need to know
- Harassing Phone Calls: What To Do
- The Truth about Cell Phones and the Do Not Call Registry

**Latest Videos**
- Geerts PSA on telemarketers
- Fun with Telemarketers
- Tom Mabe - Cemetary Telemarketer Prank
- Tom Mabe Pranks Telemarketer With Fake Death Scene
- Silly Telemarketer

**Link Buttons**
Place one of these buttons on your blog and spread the word! The more people participate the stronger our voice is.

Directory of "Unknown" Callers

Phone Fraud? Report it!! Stop it!

1-312-499-5900 / 13124995900

For more information on Houlihan Smith & Company or the services it provides please visit
www.houlihansmith.com or call Toll Free 1-800-654-4977.
*Caller: Houlihan Smith & Company*
*Caller Type: Commercial*

Copyright 800notes.com 2009 | Privacy Policy | Terms of Service | Legal Stuff

Reply

Loretta - 6 Dec 2008                                                      Rating: +3

Stop soliciting everyone with your obnoxious salesmen! Thank you!

Reply

Gatekeeper from Hell - 15 Jan 2009                                       Rating: +5

If you're such an UPSTANDING company - why must you resort to these types of tactics?  Can't
imagine ANY of your sales people getting by the gate keepers?  How DO you sell ANYTHING?  Slipping
charges on unknowing peoples credit cards too? hmmmmm

Reply

greygoose6 - 7 Nov 2007                                                  Rating: +3

Same deal here.  The caller implied that our President was expecting his call regarding a 'confidential
business matter'.  I confirmed that he wasn't and hung up.

Reply

fishie - 14 Jan 2008                                                     Rating: +2

Same thing as stated before, "acted familiar, assertive and vague."  I got a woman who really was pushy.
*Caller ID: 312-499-5900*
*Caller: Houlihan Smith*

Reply

Investment Bank Bootcamp
4-Wk Philadelphia iBank & Valuation Training By Sr Bankers $95+ Billion
www.ibtraining.com
Ads by Google

receptionist - 23 Jan 2008                                               Rating: +2

Male caller identified self as "Jay Miller" of Houlihan/Smith and asked for the President by familiar first
name.  I asked if the call was regarding a specific project.  He answered "No."  I asked if it was a sales
call.  He said "No." I said I would need to take a message.  Man asked quite rudely "is he not in?" I put
him on hold and he hung up within a couple of minutes.
*Caller ID: Illinois 312 499 5900*
*Caller: Unknown*

Reply

Former Employee - 4 Feb 2008                                             Rating: +10

I was stupid enough to take a job with this strong armed scam company that calls itself an investment
banking advisory firm.  We had to cold call 300 or more numbers a day.  We would be barked and yelled at
by our supervisors and managers every day.  We all used fictious names.  This company lies to its so
called clients.  It lies to it's employees.  And they all lie to each other.  Why did we have to use fake names
when we called clients?????  An investment bank is typically filled with ivy league graduates and MBAs.
This company is filled with people who can hardly get a job.  The cold calling floor I worked on was led
by a team of non college educated scammers who all came from a highly fraudulent company called IPA
or International Profit Associates.  They scammed their clients at that firm and they are doing the same
here.  BEWARE!!!! I guarantee they will get sued numerous times for scamming clients for $30K to $100K
for so called advisory work as a bait to get them to think they will get funded with debt or equity. Yeah
right.  Worse is the strong armed intimidating techniques they do to business owners.

Reply

A.C - 25 Apr 2008                                                        Rating: +4

Ahh, this makes a lot of sense now.  I too received a call from a vaguely rude man.  I have had dealings
with the IPA people.  I have a file on all the calls they made to us and the reports I made to the BBB.  My
advise is for veryone to follow suit!

Reply

Trixie - 30 Apr 2008                                                     Rating: 0

Who is the BBB? And how would I contact them?

Reply

Trixie - 30 Apr 2008                                                     Rating: 1

DUH!!! Nevermind!

Reply

EA - 14 Feb 2008                                                         Rating: +2

This guy is very rude.  I know they have called my boss before but they are not getting past me.  I like the
put him on mute idea I'll remember that one.
*Caller ID:  HOULIHAN SMITH*

1-312-499-5900

---

**800Notes** *Directory of UNKNOWN Callers*

### 312-499-5900

Did you get a call from 312-499-5900? Read the posts below to find out details about this number. Also report unwanted calls to help identify who is using this phone number.

**Comments about 3124995900 number:**

Gordon Gekko, Investment Banker - 28 Jun 2008        Rating: -10 👍👎

It's an Investment Banking firm. Ask anyone of high repute in the business(Merrill Lynch, Goldman Sachs, Salomon Smith Barney, Morgan Stanley, etc), about their professional demeanor. Investment Banking is for bold, driven, take charge individuals, not wusses. Consider this, do you think a business owner/c-level executive really wants a nosey, gossipy secretary/receptionist knowing that he or she took a call regarding the possible sale of the company or search for needed working capital? Furthermore, as anyone IN the field can attest, hours as an entry level associate are LONG(!); whatever it takes to actually do what it is you claim to do. 7a-7p is considered a pleasure cruise. If you're looking for a 30-hour work week, Starbucks might be more to your liking.

*Caller ID: 312-499-5900*
*Caller: Houlihan Smith*
*Caller Type: Non-Commercial*

       💬 Reply | !

---

Gordon Gecko got sodomized in prison - 30 Jun 2008        Rating: +6 👍👎

hey Gordon? quick ? for ya, why do half of the people who work as "investment bankers" at Houlihan not have even the most basic 4-year college degrees? Can you tell me why those people that runs the "sales" force are not listed in the company website? Maybe if not for lying and ripping off biz owners, all of you would be at starbucks...Can you answer me that one?

       💬 Reply | !

---

Gekko - 6 Jul 2008        Rating: -7 👍👎

Wouldn't know anything about their specific employee mix, but in any SUCCESSFUL IB firm there would need to be a much larger support staff under the top tier transaction executives in order to effectively execute its mission.

PEOPLE - with such a juvenile reference to "prison sodomy" and exemplary diction as "those people that runs...", consider the source.

       💬 Reply | !

---

interviewed with houlihan - 5 May 2009        Rating: +1 👍👎

I had the displeasure of speaking with one of the "senior associates" (or a similar title) at Houlihan about job prospects. She was strangely quite rude to me... Thank god I did some due diligence on this worthless company. If they called my business, I would have them fly out to see me and tell them I am not interested to their tacos.

Gecko is a wannabe. He has posted the same trash on 2 or 3 other websites that I have seen so far. How is it that these a**holes can afford to be so rude to EVERYONE? You would think that a company of scammers would know to be nice...

       💬 Reply | !

---

I used to work there too - 4 Jul 2008        Rating: +6 👍👎

Sure it's an "investment banking firm", but one of high repute? I think not. And you say that you want driven and take charge individuals to work there, however, the first sight of someone that actually has common sense and the knowledge to not be treated as a slave- you do what? get them out of there as quickly as possible because of.... let's say "insubordination"? This company is a joke- the only ones that move up are brown noses. So I'd rather work at Starbucks anyday and earn an honest promo before I bust my butt working for a company like this one 10-14hrs a day, 7 days a week- then on payday worry about whether you are even getting a check. Get real!!

       💬 Reply | !

---

wahwahwah - 8 Jul 2008        Rating: -8 👍👎

There's a vast expanse between working your butt off & merely spinning your wheel. Apparently, you took a job without a full understanding of its expectations and compensation. Unfortunately for you, it appears that employer isn't willing to pay its staff just to show up and be unsuccessful at assigned responsibilities.

       💬 Reply | !

---

I used to work here too - 14 Jul 2008        Rating: +7 👍👎

No I knew exactly what type of position I was taking and I understood very well what the compensation was- what I wasn't prepared for was the extra nonsense and bull that went along with the job...descrimination, favortism, and constant verbal abuse to name a few. But fortunately for me I was terminated under false pretences, basically for all of the things listed above,so now I can spin my wheels all day long and I'm being paid for it- so hey thx again to you guys over at the sweat shop that u call Houlihan Smith ——lmao

       💬 Reply | !

---

dont you have better things to do? - 14 Jul 2008        Rating: +9 👍👎

Gordon Gekko huh? So somebody from Houlihan actually has the time and to check out these sites and post a response? What a waste! What a company of high repute should have to fix their reputation like this?

---

**Site Menu**
- Homepage
- News
- Articles
- Videos
- Contact Us

**Search Phone Number**

[Search]

For example: 777-777-7777

**Latest News**
- Vision Media Sues 800Notes
- This Week Roundup: New in Phone Scams (Jan. 24)
- FDA Warn Consumers About Phone Scam to Collect Fake Fines
- Toronto Telemarketing Firm Fined $15M For Business Directory Scam
- This Week Roundup: New in Phone Scams (Dec. 11)

**Latest Articles**
- 16 Ways You Can be Phone Scammed
- 9 Things To Do When Your Identity Stolen
- Harassing calls from a debt collector? Here is what you need to know
- Harassing Phone Calls: What To Do
- The Truth about Cell Phones and the Do Not Call Registry

**Latest Videos**
- Gaeri's PSA on telemarketers
- Fun with Telemarketers
- Tom Mabe - Cemetery Telemarketer Prank
- Tom Mabe Pranks Telemarketer With Fake Death Scene
- Silly Telemarketer

**Link Buttons**
Place one of these buttons on your blog and spread the word! The more people participate the stronger our voice is!

[Directory of Unknown Callers]

[Phone Frauds - Report It! Stop It!]

1-312-499-5900

Copyright 800notes.com 2008 | Privacy Policy | Terms of Service | Legal Stuff

🗨 Reply !

---

Gekko... - 16 Jan 2009                                                    Rating: 0 👍👎

is a fictional character from a movie. Apropos, isn't it?

🗨 Reply !

Nope - 29 Apr 2009                                                    Rating: -1 👍👎

Not at all.

🗨 Reply !

---

JB - 18 Sep 2008                                                    Rating: +7 👍👎

One of the primary roles of a "nosey, gossipy secretary/receptionist" (aka assistant) is to protect the executive from an "investment banker" (aka salesperson) like you who will never get past the assistant -- at the executive's specific request.

🗨 Reply !

---

Gigi - 14 Nov 2008                                                    Rating: +6 👍👎

These are the type of jerks our government gave hundreds of billions of dollars to because they ran the investment banking industry into the ground. Gordon, people with your attitude should be doing time behind bars. You provide a disservice to humanity, regardless of what company you work for. Your existance is sustained via corporate bribery and the blackmail of politicians.

I laughed out loud when I read this part, "Ask anyone of high repute in the business(Merrill Lynch, Goldman Sachs, Salomon Smith Barney, Morgan Stanley, etc)". High repute? hahahahaha I guess maybe they are highly reputable for conning an entire nation and so far, getting away with it.

🗨 Reply !

Not quite right - 5 May 2008                                                    Rating: +1 👍👎

Houlihan clearly is a scam.. but you can't put them in the same class as Goldman or JP Morgan. Not all investment banks are run like angry telemarketing offices

🗨 Reply !

---

Sabrina - 19 Jun 2009                                                    Rating: 0 👍👎

Executive Assistant, like most of the people posting here, work for Pres and CEO's. We are highly qualified and make a pretty decent salary. We are not gossips and our job is to route out all of the sale people calling to bother our bosses. I just got this call too. I told him the boss is out of town. Now I know to make sure to tell him he is on an extended vacation.

🗨 Reply !

---

Fred - 2 Jul 2008                                                    Rating: +4 👍👎

Caller identified himself from Houlihan Smith. Wanted to talk to me about lending our company money. Very arrogant sales person. Did some checking on the internet and found them to be an existing company. Some comments on their tactics were very negative.
Caller ID: 312-799-5000
Caller: Houlihan Smith
Caller Type: Telemarketer

🗨 Reply !

---

check out this site too - 4 Jul 2008                                                    Rating: +1 👍👎

www.whocallsme.com and type in 312-499-5900 you'll be amazed

🗨 Reply !

---

Assistant to President - 7 Jul 2008                                                    Rating: +3 👍👎

Brent Evans with Houlihan Smith called--same story--asked me to tell my boss he was holding. Wouldn't give any specifics--stated a confidential business matter between him and the President got very upset when he was sent to voice mail. If he ever calls again--I'll just hang up! Thanks!
Caller: Houlihan Smith

🗨 Reply !

---

Gordon Gekko is an inbred - 10 Jul 2008                                                    Rating: +6 👍👎

These people have tried getting through to my boss several times now acting as if he is expecting their call and try to find out when he will be in. They'll agree to be transferred to voicemail then hang up.

I am glad I know this about them now, I am going to have some fun next time they call!!
Caller ID: 312-499-5900
Caller: Houlihan Smith
Caller Type: Telemarketer

🗨 Reply !

---