-1000

**Darke, Richard P.**

| | |
|---|---|
| From: | Jamon [email@jamon.name] |
| Sent: | Tuesday, April 13, 2010 9:45 PM |
| To: | Darke, Richard P. |
| Subject: | Re: FW: Message from "RNPF3F08A" |

Hi. If your client is interested I'd be willing to host a copy of the affidavit you sent me on the web so visitors can read it. Information cannot really be subtracted from the internet, as it is technically difficult to control. For every piece of info you get taken down, 10 more will pop up on other channels. A better public relations approach seems to be adding positive information to the pool, and allowing it to counteract the negative statements.

Darke, Richard P. wrote:
> My firm represents Houlihan Smith & Company, Inc. and Houlihan Smith Advisors, LLC. I am attaching a letter to this email requesting that you and your company remove certain false and defamatory postings on your website. If you have any attorney who generally represents you and/or your company, please have him or her give call me with any questions. I thank you in advance for your cooperation.



EXHIBIT
L

1

3303

CCG N003-150M-2/27/04 (3335092)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Houlihan Smith & Company, Inc., et al

v.

Julia Forte, et al

} No. 10 C H 16477

### NOTICE OF MOTION

To: SEE ATTACHED SERVICE LIST

On Friday, April 16, 2010 _____, at 2:30 p.m. a.m. p.m. or as soon thereafter as counsel

may be heard, I shall appear before the Honorable Mary K. Rochford or any Judge sitting in that

Judge's stead, in the courtroom usually occupied by him/her, located at Daley Center, Courtroom 2308

50 W. Washington St., Chicago, _____, Illinois, and present

Plaintiffs' motion for temporary restraining order

Name Richard P. Darke (Duane Morris LLP)    Atty. No. Firm ID 38820    ~~Pro Se~~ 99500

Address 190 S. LaSalle St., Suite 3700    Attorney for Plaintiffs

City/State/Zip Chicago, IL 60603    Telephone 312-499-6743

### PROOF OF SERVICE BY DELIVERY

I, Richard P. Darke, the attorney/~~non attorney~~* certify that on the 16th day of

April, 2010 _____, caused to be (*strike one) I served this notice by delivering a copy personally to each person to whom it is directed.

Date 4/16/10

_____
Signature/Certification

### PROOF OF SERVICE BY MAIL

I, _____, the attorney/non attorney* certify that I served this notice by mailing (*strike one)

a copy to _____ at _____ (address on envelope)

and depositing the same in the U. S. Mail at _____ (place of mailing)

a.m.
at _____ p.m. on the _____ day of _____, _____, with proper postage prepaid.

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# log 111

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused the attached 4/16/10 Order to be served on April 16, 2010, via Email and U.S. Mail, postage prepaid, upon:

| | |
|---|---|
| Julia Forte, individually<br>624 Holly Springs Rd. - #303<br>Holly Springs, NC 27540 | Julia Forte<br>d/b/a 800Notes.com Advent LLC<br>624 Holly Springs Rd. - #303<br>Holly Springs, NC 27540 |
| Julia Forte<br>d/b/a whocallsme.com<br>624 Holly Springs Rd. - #303<br>Holly Springs, NC 27540 | Jamon Silva, individually<br>65 Winter St.<br>Lexington, MA 02420 |
| Jamon Silva<br>d/b/a whocalled.us.com<br>65 Winter St.<br>Lexington, MA 02420 | |

Richard P. Darke

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

HOULIHAN SMITH & COMPANY,      )
INC.® and HOULIHAN SMITH       )
ADVISORS, LLC,                 )
                               )
        Plaintiffs,            )
                               )          Case No.  10CH16477
    v.                         )
                               )
JULIA FORTE, individually;     )
JULIA FORTE d/b/a 800Notes.com )
Advent LLC;                    )
JULIA FORTE d/b/a whocallsme.com; )
JAMON SILVA, individually;     )
JAMON SILVA d/b/a whocalled.us.com; )
JOHN DOES 1-30; and            )
JANE DOES 1-30,                )
                               )
        Defendants.            )

## PLAINTIFFS' MOTION FOR ENTRY OF
## TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS

Houlihan Smith & Company, Inc.® ("Houlihan Smith") and Houlihan Smith Advisors,

LLC ("Houlihan Smith Advisors") (collectively, "Plaintiffs" or "Houlihan"), move the Court for

entry of a temporary restraining order, pursuant to 735 ILCS 5/11-101, *et seq.* and applicable

Illinois Supreme Court Rules, against the Defendants, Julia Forte, individually ("Forte"); Julia

Forte d/b/a/ 800Notes.com Advent LLC ("800Notes"); Julia Forte d/b/a whocallsme.com

("Whocallsme"); Jamon Silva, individually ("Silva"); Jamon Silva d/b/a whocalled.us.com

("Whocalled.us") (800Notes, Whocallsme, Whocalled.us, Forte, and Silva are collectively

referred to as the "Website Defendants"); John Does 1-30; and Jane Does 1-30 (collectively,

"Jane and John Doe Defendants") (the "Website Defendants" and the "Jane and John Doe

Defendants" are collectively referred to as the "Defendants").  In support of their request for

entry of a temporary restraining order, Plaintiffs submit their Verified Complaint for Injunctive

and Other Relief, their Memorandum of Law in support of their Motion for Entry of a

Temporary Restraining Order, and the Affidavits of Charles Botchway and Andrew Smith.

**WHEREFORE**, Plaintiffs, Houlihan Smith & Company, Inc.® and Houlihan Smith

Advisors, Inc., respectfully request that the Court enter:  (1) A temporary injunction prohibiting

all Defendants, their agents, servants, employees and/or all persons acting in concert or

participation with them, or any of them, from publishing any further statements regarding

Houlihan Smith & Company, Inc.®, Houlihan Smith Advisors, LLC, their affiliates and any of

their employees, agents or representatives, including but not limited to Andrew (Andy) Smith

and Charles Botchway;  (2) A temporary injunction ordering all Defendants to remove all

statements regarding Houlihan Smith & Company, Inc.®, Houlihan Smith Advisors, LLC, and

all of their affiliates and employees, agents or representatives, including but not limited to

Andrew (Andy) Smith and Charles Botchway, from all of the Websites;  (3) A temporary

injunction ordering the Website Defendants to block all access by the individuals who originally

posted the defamatory statements from accessing the Websites and/or from posting any

comments about Plaintiffs;  (4) A temporary, preliminary and permanent injunction against the

Website Defendants from continuing to disseminate, publish, use or republish the defamatory

statements and to remove any and all reference to the defamatory statements from the Websites,

including but not limited to any use of names, words, designations or symbols consisting or

otherwise similar to the Houlihan Marks, marks, service marks, names and identities of

Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code,

metatags, search terms, keywords, key terms, hit generating pages, or any other device used,

intended, or likely to cause any website of Defendants to associate the Plaintiffs with the

defamatory materials at issue here or the intellectual property rights;  (5) An order compelling

the Website Defendants to immediately provide Plaintiffs with all information concerning the

identity of individuals and/or entities that have published the defamatory materials, including

their IP address, name, address, telephone number, email address and any other information

necessary to identify the individual and/or entity responsible for publishing the defamatory

statements;  (6) An order allowing the parties to conduct expedited discovery over the next 30

days to determine the identities of the individuals and/or entities publishing the false and

defamatory statements about Plaintiffs' and their employees, agents, principals and other

representatives;  (7) An order scheduling a preliminary hearing in this matter on or before May

15, 2010; and  (8) Such other relief to which Plaintiffs are entitled.

**HOULIHAN SMITH & COMPANY, INC.®
and HOULIHAN ADVISORS, LLC**

By: _____
                One of Their Attorneys

Richard P. Darke
Rosanne Ciambrone
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6700
(312) 499-6701 (fax)
Firm Id. No.: 38820

DM1\2151442.5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

HOULIHAN SMITH & COMPANY,              )
INC.® and HOULIHAN SMITH              )
ADVISORS, LLC,                        )
                                      )
                    Plaintiffs,       )
                                      )
        v.                            )     Case No.  10 CH 16477
                                      )
JULIA FORTE, individually;            )
JULIA FORTE d/b/a 800Notes.com        )
Advent LLC;                           )
JULIA FORTE d/b/a whocallsme.com;     )
JAMON SILVA, individually;            )
JAMON SILVA d/b/a whocalled.us.com;   )
JOHN DOES 1-30; and                   )
JANE DOES 1-30,                       )
                                      )
                    Defendants.       )

> **ENTERED**
> JUDGE MARY K. ROCHFORD-1570
> APR 16 2010
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

## TEMPORARY RESTRAINING ORDER

This matter coming to be heard on the Motion For Temporary Restraining Order of

Plaintiffs, Houlihan Smith & Company, Inc.® and Houlihan Smith Advisors, LLC *with supporting Memorandum and Affidavits, and Verified Complaint for Injunctive and Other Relief, and Additional Exhibits filed in court* and their

principals, employees, agents and representatives who are authorized to maintain this action on

their behalf; Plaintiffs having shown a likelihood of success on the merits of their claims for

defamation *per se* (Count I), violation of the Illinois Trademark Registration and Protection Act,

765 ILCS 1036/6I5 (Count II); violation of the Illinois Right of Publicity Act, 765 ILCS 1075/et

seq. (Count IV); intentional interference of prospective business opportunity (Count V): violation

of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 (Count VI); violation of

the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 (Count VII);

consumer law misappropriation (Count VIII); and injunctive relief (Count IX).  Plaintiffs having

further shown that they have suffered irreparable harm as a result of Defendants' false statements

DM1\2160514.1



and will continue to suffer irreparable harm if a temporary restraining order does not issue;

Plaintiffs having shown that they have suffered irreparable harm to their reputations in their

communities, to their business relationships, and in their business or prospective business

relationships, including dilution and tarnishment of the Houlihan tradename and Marks (as

defined in the Complaint), injury to competitive advantage, damage to goodwill both within their

companies and in their businesses, hampering their ability to hire new employees, loss of

revenue, and the potential loss of future business, all as a result of Defendants' defamatory

statements and misuse and misappropriation of Plaintiffs' trademarks, and will continue to suffer

irreparable harm if a temporary restraining order does not issue;  Plaintiffs having shown that the

balance of the hardships weighs in their favor; and the Court finding that the public interest is

best served by issuing a temporary restraining order.

The Court further finding that Plaintiffs have made reasonable and good faith efforts to

serve notice of their motion for temporary restraining order on the Website Defendants, and that

it appears from the Affidavits and verified facts that immediate and irreparable injury will result

before notice.

**IT IS HEREBY ORDERED** that the Website Defendants, *Julia Forte, individually, and d/b/a 800Notes.com, Advent LLC and Jamon Silva, individually and d/b/a whocalledus.com* their officers, agents,

servants, employees, and attorneys, and those persons acting in concert or participation with

them, or any one of them, who receive actual or constructive notice of this order by personal

service or otherwise, shall:

(a)     block all statements, including statements published via pseudonyms, of a factual

nature, or which appear to be of a factual nature, regarding Houlihan Smith & Company, Inc.®

and Houlihan Smith Advisors, LLC, or any of their principals, employees, agents and

representatives; and

(b)      block all reference to the defamatory statements from the Websites, including but not limited to any use of names, words, designations or symbols consisting or otherwise similar to the Houlihan Marks, marks, service marks, names and identities of Plaintiff's principals, employees, agents, and representatives from any HTML text, buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other device used, intended, or likely to cause any website of Defendants to associate the Plaintiffs with the defamatory materials at issue here or the intellectual property rights.

**IT IS FURTHER ORDERED** that the Website Defendants shall block any and all of the individuals and/or entities who originally posted the defamatory postings from posting or otherwise publishing any defamatory statements about Plaintiffs and their principals, employees, agents or representatives or concerning the Houlihan Smith trademarks and name.

**IT IS FURTHER ORDERED** that this injunction is entered without need of bond.

**IT IS FURTHER ORDERED** that the Plaintiffs shall issue subpoenas to the Website Defendants directing them to provide Plaintiffs with all information concerning the individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for the defamatory statements about Plaintiffs and their agents.

**IT IS FURTHER ORDERED** that this matter is scheduled ~~for a hearing on Plaintiff's~~ MKR

~~preliminary injunction~~ for April 27, 2010 at 2:30 p..m. in Courtroom 2308 for Status, scheduling

of a preliminary injunction hearing, and Plaintiffs' oral motion for expedited discovery.

Dated: April 16, 2010

Time: _4:13 pm_

                                   ENTERED:

                                   _MKRochford_

                                   Judge, Circuit Court of Cook County, Illinois

ENTERED
JUDGE MARY K. ROCHFORD-1570
APR 16 2010
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| HOULIHAN SMITH & COMPANY, INC.® and HOULIHAN SMITH ADVISORS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No.  10 CH 16477 |
| JULIA FORTE, individually; JULIA FORTE d/b/a 800Notes.com Advent LLC; JULIA FORTE d/b/a whocallsme.com; JAMON SILVA, individually; JAMON SILVA d/b/a whocalled.us.com; JOHN DOES 1-30; and JANE DOES 1-30, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS**

## I.    INTRODUCTION

On April 9, 2010, Houlihan Smith & Company, Inc.® ("Houlihan Smith") and Houlihan

Smith Advisors, LLC ("Houlihan Advisors", and collectively with Houlihan Smith, "Plaintiffs"

or "Houlihan") learned, for the first time, that on April 6, 2010, an unknown individual

maliciously posted false statements on 800Notes.com and Whocallsme.com, falsely accusing

Plaintiffs of criminal conduct and a principal of Houlihan of being a "scam artist" and "ex-con"

and otherwise impugning the quality of services provided by Houlihan.  Immediately upon

learning of these outrageous statements, Plaintiffs informed the owners and operators of the

defamatory materials on their websites, asked them to remove the postings and, in order to

provide them with a good faith basis to remove them, provided an affidavit from Plaintiffs

43  48
120

specifically testifying under oath that the postings were false and harassing. They refused, without just cause or reason.

The April 6, 2010 posting is not an isolated incident but part of a campaign to harm Plaintiffs and their principals, employees, agents, and representatives in their personal and professional lives. In order to remedy the Defendants' wrongful conduct and misuse of Plaintiffs' intellectual property rights, Plaintiffs seek a temporary restraining order to enjoin the Defendants, Julia Forte, 800Notes.com, Whocallsme.com, Jamon Silva, Whocalled.us.com, and the Jane and John Doe Defendants (collectively, the "Defendants"; Forte, 800Notes.com, Whocallsme.com, Silva, and Whocalled.us.com collectively are referred to as the "Website Defendants").

Plaintiffs already have felt the significant adverse effects of the Defendants' deplorable conduct. They have lost revenue, suffered harm to their reputations, and lost goodwill. Employees are highly concerned and threatening to leave; Plaintiffs are having difficulty hiring new employees and obtaining new customers; their existing customers are repeatedly questioning the truth of the defamatory statements. These harms will continue into the future if Defendants' wrongful conduct is not stopped.

Under Illinois law, the Court has the right to order Defendants to remove the unlawful internet postings and to order Defendants to stop the continued dissemination and misappropriation and use of Houlihan Smith's trademark and other intellectual property rights. The Court has the right to award Plaintiffs this relief pursuant to Plaintiffs' claims for defamation *per se* and *per quod* (Counts I and II), violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65 (Count III), violation of the Illinois Right of Publicity Act, 765 ILCS 1075 (Count IV); intentional interference with prospective business opportunity

2

(Count V); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 (Count VI); violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 (Count VII); and common law misappropriation (Count VIII).

It is clear that all factors are present here supporting an injunction: (i) the Plaintiffs have clearly ascertained rights that need protection; (ii) irreparable harm will occur without an injunction; (iii) there is no adequate remedy at law for the injury; and (iv) success on the merits is likely. The balance of harms strongly favors Plaintiffs as they have the right to operate their businesses free from unlawful conduct, to the exclusive use of their trademark, and to their right of publicity. Defendants will suffer no harm or prejudice. Moreover, the Website Defendants have the right and authority to remove and/or block access to the harassing and defamatory postings, per the Terms of Service Agreement associated with each defamatory posting, the agreements they entered into with the individual Jane and John Doe Defendants, and under the Communications Decency Act, 47 U.S.C. § 2301 *et seq.*

For these reasons, as more fully set forth herein, Plaintiffs request that the Court enter a temporary restraining order against all Defendants in accordance with the proposed order submitted herewith.

## II.   PRELIMINARY STATEMENT

The Communications Decency Act, 47 U.S.C. § 2301 *et seq.* (the "CDA"), does not bar this suit against any of the Defendants. The CDA provides that, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As drafters of the postings at issue, the Jane and John Doe Defendants are "information content providers" and as such do not fall within the protections of the CDA. Similarly, the Website Defendants, as set

3

forth in paragraphs 31 through 38 of the Complaint, also are "information content providers" that do not fall within the protections of the CDA.

Three of the counts in the Complaint relate to intellectual property and are excluded from the scope of the CDA. The CDA expressly provides that, "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). Count III (the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65 (the "Illinois Trademark Act")), Count IV (the Illinois Right of Publicity Act, 765 ILCS 1075 (the "RPA")), and Count VIII (Common Law Misappropriation of Intellectual Property Rights) are all laws pertaining to intellectual property that are not affected by the CDA.

The Illinois Trademark Act on its face pertains to intellectual property (trademarks). The common law cause of action for misappropriation similarly on its face pertains to intellectual property (again, trademarks). Moreover, the right of publicity, protected under the RPA, also constitutes an intellectual property right. *See Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 302 (N.D.N.H. 2007) ("[T]he right of publicity is a widely recognized intellectual property right. ... Such a claim therefore arises out of a 'law pertaining to intellectual property' within the meaning of the [CDA]."); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 28:1, *What is the right of publicity?* (4th ed. West 2010) ("right of publicity is property, and is properly categorized as a form of intellectual property"). Because the Illinois Trademark Act, the RPA, and common law misappropriation are "laws pertaining to intellectual property," the CDA does not limit or expand their application and does not act as a bar to the counts of Plaintiffs' Complaint premised upon them. *Atlantic Recording Corporation v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009) (holding as a matter of law that "Section 230(c)(1) does not provide immunity for either federal or state intellectual property claims.").

We also note that pursuant to the law in the Seventh Circuit, the CDA does not provide general immunity to providers or users of interactive computer services who are not information content providers. *Chicago Lawyer's Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008); *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). The CDA rather only protects from liability "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat under a state law cause of action as a publisher or speaker (3) of information provided by another information content provider." *Barnes*, 570 F.3d at 1100 (the CDA does not bar a breach of contract claim under theory of promissory estoppel). Where the causes of action in the Complaint do not treat the Defendants as a publisher or speaker of content provided by another, the CDA does not act as a bar.

Finally, should the CDA bar the Complaint against the Website Defendants, the Plaintiffs would be left without a remedy. Section 12 of the Bill of Rights under the Constitution of the State of Illinois governs every person's right to remedy and justice:

> Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely and promptly.

Constitution of the State of Illinois, Article 1, Bill of Rights, § 12. There must be a remedy for a clear wrong. The Plaintiffs must be entitled to some avenue of relief that would compel the Website Defendants to remove the false, malicious and defamatory posts. Moreover, while Section 4 of the Bill of Rights of the Constitution of the State of Illinois states that "all persons may speak, write and publish freely," it also expressly recognizes that such persons are "responsible for the abuse of that liberty." Const. of the State of Ill., Art. 1, Bill of Rights § 4.

47 122
124

## III.  ARGUMENT

The purpose of a preliminary injunction and temporary restraining order is to preserve the *status quo* pending a decision on the merits of the cause. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 155, 601 N.E.2d 720, 726 (1992). "The four factors which must be established before an injunction will be granted are that: (1) a clearly ascertained right that needs protection exists; (2) irreparable harm will occur without the injunction; (3) there is no adequate remedy at law for the injury; and (4) success on the merits is likely." *Id.*

> All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that you probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable for the positions of the parties should stay as they are until the court has had an opportunity to consider the case on the merits.

*ABC Trans Nat'l Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 682, 379 N.E.2d 1228, 1236 (1st Dist. 1978); *K. F. K. Corp. v. Am. Cont'l Homes, Inc.*, 31 Ill. App. 3d 1017, 1020, 335 N.E.2d 156, 158 (1st Dist. 1975). A temporary restraining order is proper in situations where an emergency exists, such as here, and serious harm would result if the injunction is not issued. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & W. Ry.*, 195 Ill. 2d 356, 365, 748 N.E.2d 153 (2001). Here, Plaintiffs are entitled to a temporary restraining order as they meet all of the requirements for this relief. An emergency exist because the April 6, 2010 posting imputes criminal conduct to principals of Plaintiffs and Plaintiffs themselves and currently is being circulated over the internet, and hence throughout the world, by Defendants.

### A.  PLAINTIFFS HAVE CLEARLY ASCERTAINABLE RIGHTS IN NEED OF PROTECTION

To obtain injunctive relief, the Plaintiffs must first establish a clearly ascertainable right in need of protection. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 155, 601 N.E.2d 720, 726 (1992). Plaintiffs have several ascertainable rights in need of protection. First, Illinois law is

clear that a plaintiff's business and right to pursue one's livelihood free from unlawful interference constitutes a clearly ascertainable right in need of protection. *See, e.g., Dugan Oil Co. v. Coalition of Area Labor*, 98 Ill. App. 3d 126, 134, 423 N.E.2d 1373, 1379 (4th Dist. 1981) (affirming award of injunctive relief and, in reference to Illinois public policy, holding "that a person's business is considered 'property' and is entitled to protection from harm."); *ABC Trans Nat'l Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683-88, 379 N.E.2d 1228, 1236-40 (1st Dist. 1978). Second, Illinois law is also clear that Plaintiffs have a protectable intellectual property right in the trademark "Houlihan Smith & Company, Inc.®" (Complaint, Exhibit A and Affidavits attached as Exhibits E and F)[1]; *see also* Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65. The trademarks as described in this paragraph are collectively referred to herein as the "Houlihan Marks." Third, Plaintiffs have a protectable interest in the use of their trademarks, marks, names and reputation independently of the Houlihan Marks under claims for common law misappropriation of intellectual property rights and violation of the RPA. *See, e.g., Board of Trade v. Dow Jones & Co.*, 108 Ill. App. 3d 681, 439 N.E.2d 526 (1st Dist. 1983), *aff'd*, 98 Ill. 2d 109, 456 N.E.2d 84 (1983); 765 ILCS 1075. Fourth, the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, also confirms that the Plaintiff's have a protectable interest in their services, business, and, *inter alia*, good will.

**B.  PLAINTIFFS DO NOT HAVE AN ADEQUATE REMEDY AT LAW AND THEY HAVE AND WILL CONTINUE TO SUFFER IRREPARABLE HARM IF DEFENDANTS' CONDUCT IS NOT ENJOINED**

To constitute an adequate remedy at law, the legal remedy must "be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." *K.F.K. Corp.*, 31 Ill. App. 3d at 1021, 335 N.E.2d at 159. "Thus, while the plaintiff's

---

[1]  All references to the Plaintiffs' Verified Complaint will be to the "Complaint"; all references to Exhibits will be to the Exhibits attached to the Complaint.

ultimate relief may be a money judgment, it does not deprive the court of equity the power to grant a preliminary injunction." *Id.; see also ABC Trans Nat'l*, 62 Ill. App. 3d at 686, 379 N.E.2d at 1239 (reversing refusal to enter injunction for alleged adequate remedy at law and holding "defendants' ability to later respond in damages should not, in our opinion, preclude the entry of a preliminary injunction."). An award of damages in this case does not provide Plaintiffs with an adequate remedy.

The decision in *ABC Trans National* sheds light on the inadequacy of damages when a business is defamed and disparaged. *ABC Trans Nat'l*, 62 Ill. App. 3d 671, 379 N.E.2d 1228. In *ABC Trans National*, executives of the plaintiff, who were entrusted to manage plaintiff's company, conspired to run plaintiff out of business and to steal plaintiff's employees and customers, in an attempt to take over plaintiff's business and staff a competing business. Plaintiff moved for a preliminary injunction. In reversing the lower court's refusal to grant injunctive relief, the First District held:

> The existence of a remedy at law does not deprive equity of its power to grant injunctive relief unless the remedy is adequate, *i.e.* the remedy at law must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. Thus, the fact that plaintiff's ultimate relief may be a money judgment does not deprive a court of equity the power to grant a preliminary injunction.

*ABC Trans Nat'l*, 62 Ill. App. 3d at 684, 379 N.E.2d at 1237 (citing *K.F.K. Corp.*, 31 Ill. App. 3d at 1021, 335 N.E.2d at 159).

Moreover, injury to competitive advantage, reputation and goodwill, and the potential loss of future business – such as Defendants have already caused Plaintiffs - is incapable of adequate compensation and justifies entry of injunctive relief. *Scheffel & Co., P.C. v. Fessler*, 356 Ill. App. 3d 308, 314, 827 N.E.2d 1, 6 (5th Dist. 2005); *A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 627 N.E.2d 21 (1st Dist. 1993) ("Plaintiff has no adequate

remedy at law. While pecuniary damages can be calculated, loss of competitive position is intangible, incapable of being measured."); *Cross Wood Products, Inc. v. Suter*, 97 Ill. App. 3d 282, 422 N.E.2d 953 (1st Dist. 1981). *See also Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039 (N.D. Ill. 2007) (finding reputational harm and diminished goodwill include irreparable harm that cannot be remedied at law and state a claim for injunctive relief) (citing *Gateway Eastern Ry. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("We have stated that showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."); and *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (stating, in the context of examining the presumption of irreparable harm under the Lanham Act, "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill")).

Illinois law is also crystal clear that "[t]he loss of customers and sales and the threat of continuation of such losses to a legitimate business interest, as alleged by plaintiff here, is sufficient to show that plaintiff will suffer irreparable injury unless protected." *Gold v. Ziff Communications Co.*, 196 Ill. App. 3d 425, 434, 553 N.E.2d 404, 411 (1st Dist. 1989); *U-Haul Co. of Cent. Illinois v. Hindahl*, 90 Ill. App. 3d 572, 576-77, 413 N.E.2d 187, 192 (3d Dist. 1980) (same). While immediate damages in loss of sales may be calculable, the potential loss of future business is incapable of adequate computation. *U-Haul*, 90 Ill. App. 3d at 576-77, 413 N.E.2d as 192.

Also, under Illinois law "[a] showing of irreparable injury is related to the proof of a legitimate business interest." *Donald McElroy, Inc. v. Delaney*, 72 Ill. App. 3d 285, 294, 389 N.E.2d 1300, 1308 (1st Dist. 1979). It is for this reason that Illinois courts consistently hold that "[o]nce a protectable interest has been established, injury to plaintiff will presumably follow if

9

that interest is not protected." *Donald McElroy*, 72 Ill. App. 3d at 294, 389 N.E.2d at 1308; *U-Haul*, 90 Ill. App. 3d at 577, 413 N.E.2d at 192.

Here, an award of money damages does not provide the Plaintiffs a complete, practical or efficient remedy. The Defendants' wrongful dissemination of the defamatory postings and impermissible use of Plaintiffs' intellectual property rights has already cost Plaintiffs' substantial lost revenue, customers, and goodwill. (Complaint ¶¶ 48-50.) It has harmed the reputation of the Plaintiffs and their principals, employees, agents and representatives, and impugned the services they offer. Defendants conduct has caused and will continue to cause irreparable harm if not enjoined.

## C. PLAINTIFF HAS A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs have asserted nine causes of action against Defendants: (1) defamation *per se* and *per quod* (Counts I and II), (2) violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65 (Count III), (3) violation of the Illinois Right of Publicity Act, 765 ILCS 1075 (Count IV); (4) intentional interference with prospective business opportunity (Count V); (5) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 (Count VI); (6) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 (Count VII); (7) common law misappropriation (Count VIII), and (8) injunctive relief (Count IX). Under each theory of relief, the Plaintiffs are entitled to injunctive relief against all of the parties.

### 1. Defamation *Per Se*

#### a. The Postings Constitute Defamation *Per Se*

All of the Defendants' statements constitute defamation *per se* for all of them impute the commission of a criminal offense, an inability to perform or want of integrity in the performance of one's duties, or otherwise prejudice Plaintiffs, or impute a lack of ability, to perform their

trade, profession or business. (Complaint ¶ 26, Exhibits D-F.) Under Illinois law, "[a] statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992). Statements may be considered defamatory *per se* or *per quod. Kolegas*, 154 Ill. 2d at 10, 607 N.E.2d at 206. "Statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Id.*

> [At common law], four categories of statements that are considered defamatory *per se*: (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business.[2]

*Kolegas*, 154 Ill. 2d at 10, 607 N.E.2d at 206.

It is well established that statements accusing a person of being "a scam", "scam artists", "rip off", "ripping off customers" and, *inter alia*, "an ex-con" are all actionable *per se. See, e.g., Kolegas*, 154 Ill. 2d at 9-14, 607 N.E.2d at 206-208 (holding statements that plaintiff "was not for real," was "scamming" constituted defamation *per se*); *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 225-227, 617 N.E.2d 191, 198-201 (1st Dist. 1993) (holding *per se* defamatory a statement that plaintiff was "'working a scam' by filing numerous lawsuits to extract monetary settlements on a full-time basis."); *Clarage v. Kuzma*, 342 Ill. App. 3d 573, 581, 795 N.E.2d 348, 356 (3d Dist. 2003) (holding letter that implied the plaintiff was lying stated a cause of action for defamation *per se*).

---

[2]  In accordance with the Illinois Slander and Libel Act, the category of statements that are considered actionable *per se* was expanded to include statements that accuse a person of "fornication or adultery." 740 ILCS 145/1 *et seq.*

11

The Defendants' statements are not reasonably capable of an innocent construction. "The innocent construction rule requires courts to consider a written or oral statement in context, giving the words and implications therefrom their natural and obvious meaning. If, so construed, a statement 'may reasonably be innocently interpreted,' it will not be regarded as defamatory per se. ... Only reasonable innocent constructions will remove an allegedly defamatory statement from the *per se* category." *Kolegas*, 154 Ill. 2d at 11, 607 N.E.2d at 206-07. Here, all of the statements, when given their natural and ordinary meaning and read in the context of the postings, clearly and concisely accuse Plaintiffs of being "scam", "scam artists", "rip offs", that they "rip off their customers", and, *inter alia*, are "ex-cons." There is no reasonable innocent construction. They all fall squarely in the *per se* defamatory categories recognized by the Illinois Supreme Court. *Id.* The statements all imply that Plaintiffs and their principals, employees, agents and representatives lack integrity in performing their professional duties; committed crimes; or otherwise prejudice them, or impute a lack of ability in the performance of their trade, profession or business.[3]

The Defendants' statements do not enjoy First Amendment constitutional protection because they can reasonably be interpreted as stating actual fact. "The test for determining whether a statement is protected from defamation claims under the first amendment is whether it can reasonably be interpreted as stating actual fact. In applying this test [courts] are guided by several criteria: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that is has factual content." *Solaia Tech., LLC v. Specialty Publ. Co.*, 221 Ill. 2d 558,

---

[3] The term "scam" is defined as "fraudulent or deceptive act or operation". MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, p. 1041 (10th ed. 1999). The term "rip-off" means "cheat, defraud, steal, to copy or imitate blatantly or unscrupulously." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, p. 1011 (10th ed. 1999).

12

581, 852 N.E.2d 825 (2006); *Kolegas*, 154 Ill. 2d at 15-16, 607 N.E.2d at 208. Under the standards enunciated by the Illinois Supreme Court, it is clear that none of the statements deserve constitutional protection.

All of the statements are statements of fact (and they are all false). For instance, the April 6 posting references individuals associated with Plaintiffs by first and last name; it specifically impugns the ability of an employee to perform valuations; impugns Plaintiffs' alleged hiring practices; makes specific factual assertions (albeit false) about specific valuation projects and Plaintiffs' manner of charging for the same; makes specific claims regarding what is or is not on the companies' website and the alleged reason for the same; discusses specific floors used by the company and falsely states in a purely factual nature that the companies are "under investigation." (Complaint ¶ 26, Exhibit B.) The remaining defamatory postings are all equally factual in nature and all are false. (Complaint ¶ 26, Exhibits B-F.) None of them can be read as stating anything other than actual facts. The first amendment provides them no constitutional protection. Because the postings are defamatory *per se*, cannot be innocently construed and do not warrant any constitutional protections, Plaintiffs have stated a claim for defamation *per se* against the Defendants.[4]

### 2.   DEFENDANTS VIOLATED THE ILLINOIS TRADEMARK ACT

The Illinois Trademark Act specifically entitles Plaintiffs to an injunction against all of the Defendants for the wrongful and unauthorized use of the Houlihan Marks because Defendants' use has caused and continues to cause injury to Plaintiff's business and dilutes and

---

[4]   Defamation *per quod* exists where the defamation is as a consequence of surrounding circumstances, or not apparent on its face. Here, the defamation appears on the face of the statements and it should not be necessary to resort to Plaintiffs' alternative claim for defamation *per quod*. Should this Court conclude that the defamation is not facially apparent, the Plaintiffs request that the Court take into consideration the surrounding circumstances to find defamation *per quod*.

13

tarnishes the Houlihan Marks. 765 ILCS 1036/65 ("The owner of a mark which is famous in this

State shall be entitled, subject to the principles of equity and upon such terms as the court deems

reasonable, to an injunction against another person's commercial use of a mark or tradename, if

the use begins after the mark has become famous and causes dilution of the distinctive quality of

the mark, and to obtain such other relief as is provided in this Section.")

First, it is beyond question that Houlihan Smith owns the Houlihan Marks. It has used

the Houlihan Marks in connection with its investment services since at least 1996; in addition, its

federal registrations with the USPTO of the Houlihan Marks confirm its ownership and the

validity of the same. (Complaint, Exhibit A, U.S. Trademark Registration Nos. 3,390,591 for

Houlihan Smith & Company, Inc. (words only) and 3,387,276 for Houlihan Smith & Company

Inc. (words and design)).

Section 65 of the Illinois Trademark Act provides a non-exclusive list of factors to

consider in determining whether a mark is "famous":

> In determining whether a mark is distinctive and famous, a court may consider
> factors such as, but not limited to:
>
> (1)   the degree of inherent or acquired distinctiveness of the mark in
>        this State;
>
> (2)   the duration and extent of use of the mark in connection with the
>        goods and services with which the mark is used;
>
> (3)   the duration and extent of advertising and publicity of the mark in
>        this State;
>
> (4)   the geographical extent of the trading area in which the mark is
>        used;
>
> (5)   the channels of trade for the goods or services with which the mark
>        is used;
>
> (6)   the degree of recognition of the mark in the trading areas and
>        channels of trade in this State used by the mark's owner and the
>        person against whom the injunction is sought;
>
> (7)   the nature and extent of use of the same or similar mark by third
>        parties; and

(8)      whether the mark is the subject of a State registration in this State, or a federal registration under the Act of March 3, 1881, or under the Act of February 20, 1905, or on the principal register.

765 ILCS 1036/65(a)(1)-(8). These factors weigh heavily in Plaintiffs' favor.

The first and eighth factors directly support finding that the Houlihan Marks are famous, by the very fact of their federal trademark registrations on the Principal Register and the exclusive and continuous use of those marks for nearly 14 years in connection with their services. In fact, under Illinois law, the "Secretary may accept as evidence that the mark has become distinctive, as used in connection with the applicant's goods or services, proof of continuous use thereof as a mark by the applicant in this State for the 5 years before the date on which the claim of distinctiveness is made." 765 ILCS 1036/10(e); *see also* 15 U.S.C. § 1052(f) (setting forth a nearly identical standard for acquired distinctiveness under the Lanham Act); *see also* TMEP § 1212 (providing that a mark that has acquired distinctiveness as a mark in relation to the named goods or services is registrable on the Principal Register).

The remaining factors also demonstrate that the Houlihan Marks are famous within the meaning of the Act in the state of Illinois. Regarding the second, third, fourth, and fifth factors, Houlihan Smith has exclusively and consistently used the Houlihan Marks in connection with Plaintiffs' services throughout Illinois and on the internet since 1996. (Complaint ¶¶ 21, 41, 47.) Plaintiffs use the Houlihan Marks extensively in its advertising, on the internet and elsewhere, in connection with its investment banking services and within its industry. (Complaint ¶¶ 21, 41.) In addition, Defendants' own use demonstrates that the sixth factor is likely to weigh in favor of Plaintiffs. The individual Jane and John Doe Defendants' use of the Houlihan Marks demonstrate recognition of the marks, as does Website Defendants' use of the Houlihan Marks in their metatags/HTML code. *(*Complaint ¶¶ 31-38.) Finally, Plaintiffs are unaware of any third party use of a mark that is the same as or similar to the Houlihan Marks.

15

57 + 40
134

The Website Defendants' "commercial use" and continued "commercial use" of the Houlihan Marks entitled Plaintiffs to injunctive relief under the Illinois Trademark Act. While Plaintiffs are unaware of Illinois case law determining whether the use of a metatags[5] constitutes commercial use under the Illinois Trademark Act, the Eleventh Circuit clearly answered this question in the positive. In *North America Medical Corp. v. Axiom Worldwide, Inc.*, the Eleventh Circuit found that the defendant's use of plaintiff's trademarks in defendant's metatags constituted "use in commerce" under the Lanham Act because they were used as a part of defendants "effort to promote and advertise its products on the Internet." *North America Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218-19 (11th Cir. 2008).

Moreover, trademark dilution under Illinois law means "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 765 ILCS 1036/5(c) (emphasis added). The New Jersey District Court has considered commercial use in the context of a claim for trademark dilution under a New Jersey dilution statute, which is instructive here. In *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 287 (D. N.J. 1998), plaintiff sought a preliminary injunction against a defendant, alleging a claim for dilution pursuant to both 15 U.S.C. § 1125(c) and the New Jersey state dilution law. Although the Court rested its decision in part on defendant's use of the website as a conduit to defendant's own website, which sold merchandise, the Court also offered a second line of reasoning for finding that the defendant's conduct constituted commercial use:

---

[5] "Metatags are HTML [HyperText Markup Language] code intended to describe the contents of the web site. ... The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be 'hit' in a search for that keyword and the higher on the list of 'hits' the web page will appear." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 n.1 (7th Cir. 2002) (internal citations omitted). Although a user does not initially view the source code when viewing the contents of a website, it is, in fact visible to the public.

58 /†/†
135

The conduct of Defendant also constitutes a commercial use of the mark and the Name of the Plaintiff Organization because it is <u>designed to harm the Plaintiff Organization commercially by disparaging it and preventing the Plaintiff Organization from exploiting the Mark and the Name of the Plaintiff Organization.</u> In addition, the Defendant Internet site has and will continue to inhibit the efforts of Internet users to locate the Plaintiff Organization Internet site.

993 F. Supp. at 309 (emphasis added). The Court concluded that plaintiffs had demonstrated a likelihood of success on its claim for dilution pursuant to section 1125(c) of the Lanham Act and that dilution was likely established under state law. *Id.* at 311.

Third, the website Defendants have been wrongfully using the Houlihan Marks after they became famous. Fourth, Plaintiffs are likely to succeed in demonstrating that the Website Defendants use of the Houlihan Marks causes dilution of the distinctive quality of the mark. The Illinois Trademark Registration and Protection Act defines "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 765 ILCS 1036/5(c). By associating the Houlihan Marks with the term "fraud" in search engine results on Yahoo.com and Google.com, the Website Defendants use creates an association between the Houlihan Marks and "fraud" or "scam" investment services. This conduct, in and of itself, harms the reputation of the Houlihan Marks and therefore dilutes their distinctive qualities.

Finally, Plaintiffs are likely to succeed in demonstrating that Website Defendants willfully intended to cause dilution of the Plaintiffs' famous Houlihan Marks. Section 65 of the Illinois Trademark Act states in relevant part:

In an action brought under this Section, the owner of a famous mark shall be entitled only to injunctive relief in this State, unless the person against whom injunctive relief is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner

17

shall also be entitled to the remedies set forth in this Act, subject to the discretion of the court and the principles of equity.

765 ILCS 1036/65(a). Plaintiff issued a cease and desist letter on April 12, 2010, informing Website Defendants that numerous statements displayed on the Website were fraudulent and defamatory and requesting that those statements be removed. (Complaint ¶ 45, Exhibits I-L.) Nonetheless, the Website Defendants are and continue to willfully and in bad faith trade on Plaintiffs' reputation and mark, violating this Act and causing dilution of the Houlihan Marks. (Complaint ¶¶ 46-47.) For those reasons, Plaintiffs are thus likely to succeed in demonstrating willful intent and are therefore entitled to the other remedies set forth in the Illinois Trademark Act, including monetary damages.

3.    **The Website Defendants Violated The Illinois Right of Publicity Act**

Section 30 of the Illinois Right to Publicity Act, 765 ILCS 1075/1 *et seq.* ("RPA"), entitled "limitations regarding use of an individual's identity", makes it illegal for an individual or entity – such as Forte, 800Notes, Whocallsme.com, Silva or Whocalled.us.com – to "use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative." 765 ILCS 1075/30; *see, e.g., Flentye v. Kathrein*, 485 F. Supp. 2d 903 (N.D. Ill. 2007) (holding that the plaintiff stated a claim under the RPA by alleging that defendants' use of the plaintiff's name through domain names and metatags for commercial gain was barred under the Act); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005) (holding plaintiff stated a claim under the RPA because defendant's use of model's likeness in packaging and promotion of hair product was without consent and for commercial gain). In direct contravention of the RPA, the Website Defendants have maliciously and in bad faith used and continued to use the individual identities, names and likeness of Plaintiffs'

principals, agents, employees and representatives[6] for commercial purposes without their consent, written or otherwise. (Complaint ¶¶ 27, 31-39.)

That they are doing so for commercial use is clear. The Websites are in the business of operating "gripe sites." They solicit individuals in Illinois and elsewhere to visit the Websites in order to post complaints. To steer consumers to the Website and increase advertising revenue and donations, the Website Defendants create HTML text, metatags and source code directly using and associating the names and identities of Plaintiffs' individual employees with scandalous accusations, such as "scam," "fraud", "ripoff", "ex-con", among others. Not only does this seriously harm the individuals' rights, but it has the intended effect of increasing the visibility and "traffic" to the website and, consequently, the revenue and donations from companies, such as Verizon, to the Website owners. (Complaint ¶¶ 31, 38.) Worse, it disparages their names, reputation and identities 24 hours a day, seven days a week throughout the world, all for pecuniary gain without a smidgen of thought for the Plaintiffs' rights. (Complaint ¶¶ 31-38, 45-46.)

The Website Defendants thus are impermissibly using, and continue to use, the individuals' names and identities for commercial purposes, (Complaint ¶¶ 31-38), in violation of the RPA. 765 ILCS 1075/30; *Flentye v. Kathrein*, 485 F. Supp. 2d 903 (N.D. Ill. 2007) (holding that the plaintiff stated a claim under the Illinois Right to Publicity Act by alleging that defendants' use of the plaintiff's name through domain names and metatags for commercial gain was barred under the Act); *see, e.g., Mastercard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824 (N.D. Ill. 2009) (enjoining defendant's trademark infringement through use of plaintiff's mark in

---

[6] The principals, employees, agents and other representatives of Plaintiffs who are disparaged in the postings on the Websites and whose names and identities the Website Defendants are impermissibly using have authorized Plaintiffs to maintain this action on their behalf pursuant to Section 20 of the RPA. 765 ILCS 1075/20, Complaint, Exhibits E and F.

19

metatags, source code, and domain names); *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) (holding defendants violated the Lanham Act by using two of plaintiffs' registered marks on defendant's website within metatags in order to influence search results to increase the sale of its goods and services); *Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998).

This Court has the right to enjoin the Website Defendants' conduct, as specifically provided under Section 50 of the RPA. 765 ILCS 1075/50 ("Upon showing of cause as required by [735 ILCS 5/11 *et seq.*], for the issuance of injunctive relief, the court may issue such temporary restraining orders, preliminary injunctions, and permanent injunctions as may be appropriate under this Act.") For the foregoing reasons, the Plaintiffs and the individuals they represent in this action have established a likelihood of success on the merits of this claim entitling them to entry of a temporary restraining order compelling the Website Defendants to cease all use of the individuals' names and identities in on the Websites and otherwise.

**4.      The Defendants Have And Continue To Tortiously Interfere With Plaintiffs' Prospective Economic Advantage**

To state a claim for tortious interference with prospective economic advantage, the Plaintiffs must establish: "(1) that there exists a valid business relationship or expectancy, (2) of knowledge by the tortfeasor of that business relationship or expectancy, (3) of an intentional interference on the part of the tortfeasor inducing or causing the termination of the business relationship or expectancy, and (4) of resultant damage to the party whose relationship or expectancy has been disrupted." *Dugan Oil Co. v. Coalition of Area Labor*, 98 Ill. App. 3d 126, 134, 423 N.E.2d 1373, 1379 (4th Dist. 1981).

Plaintiffs have alleged that Defendants' conduct has interfered with Plaintiffs' existing and expected business relations and contracts. (Complaint ¶¶ 90, 94). The Defendants know or



reasonably should know that Plaintiffs have an expectancy of entering into and continuing its current business relationships. Despite this knowledge, the Defendants have intentionally, and with the specific intent of harming Plaintiffs and their principals, employees, agents, and representatives, published the defamatory comments and, with respect to the Website Defendants, impermissibly used Plaintiffs' intellectual property rights. (Complaint at ¶¶ 25-31, 45-50.) Their conduct is causing Plaintiffs a significant loss in revenue, customers, and goodwill. (Complaint ¶¶ 49-53.)

In *Dugan Oil*, the Court enjoined the defendants' activities and interference with the plaintiffs' business relationships through unlawful picketing of the plaintiffs' business establishment. *Dugan Oil*, 98 Ill. App. 3d at 134, 423 N.E.2d at 1379. In granting the plaintiffs an injunction against the defendants, the court held:

> The plaintiffs possessed a property right in their businesses that needed protection. As the result of the defendants' picketing, irreparable and substantial damage was being inflicted upon the plaintiffs by the loss of customers, loss of potential customers, and loss of good will, which in total amounted to loss of revenue or income to a degree that placed the businesses in a financially hazardous position. Because of the uncertainty as to damages and loss of good will, the extraordinary relief in the form of a preliminary injunction was warranted.

*Id.*

In *ABC Trans National*, the court enjoined an ex-employee of the plaintiffs from continuing to disparage the plaintiff's business and integrity and stealing its clients. *ABC Trans Nat'l*, 62 Ill. App. 3d at 683-88, 379 N.E.2d at 1236-40. The defendant, an ex-employee, was disparaging the plaintiff's business to the plaintiff's employees in the hopes that they would come to work for him in a competing business he established at the tail end of his employment with plaintiff. *Id.* Defendant also began informing plaintiff's customers that plaintiff was insolvent and would be out of business in the near future. *Id.* The court reversed the lower

21

court and granted the plaintiff an injunction against defendant. *Id.* This court should follow the reasoning and holding in *Dugan Oil* and *ABC Trans National* and enter an injunction against the Defendants.

### 5. Defendants Violated The Uniform Deceptive Trade Practices Act

Defendants have violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (the "UDTPA"), because: (a) the postings disparage the services and business of Houlihan by false and misleading representations of fact; (b) the postings falsely represent that Houlihan's services are of a particular (poor) standard or quality; and (c) the Defendants have otherwise engaged in conduct which has created a likelihood of confusion or misunderstanding relating to Houlihan's services. 815 ILCS 510/2(a). The UDTPA provides that a person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person "(7) represents that good or services are of a particular standard, quality, or grade or that good are a particular style or model, if they are of another; (8) disparages the goods, services or business of another by false or misleading representations of fact;....and (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(7), (8) and (12).

In order to prevail under the UDTPA, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding. 815 ILCS 510/2(b). Moreover, a person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court deems reasonable; proof of monetary damage, loss of profits or intent to deceive is not required. 815 ILCS 510/3. Publishers, broadcasters, printers or other persons engaged in the dissemination of information who publish or broadcast material with knowledge of its deceptive character may be held liable under the UDTPA. 815 ILCS 510/4.



Here, both the Defendants have and continue to make, publish and disseminate false, misleading and/or disparaging postings regarding Houlihan's service and business. (Complaint, Exhibits B-F.) The statements are all false, and many directly impugn the Plaintiffs' services:

> He has no clue what he is talking about as far as valuations. They hire kids to do the reports and if you are given a quote don't believe it. They will find a way to squeeze more money out of you. ... If a company asks Houlihan if they provide a certain service and they have never done it, they will tell you they have, try to figure it out, deliver the report late and in horrible quality. Auditors have not accepted these reports and the company is forced to spend more money.

(Complaint, Exhibits B, E and F.) The statements unequivocally disparage the business of the Plaintiffs and the quality of the services that they provide.

On information and belief, the Jane and John Doe Defendants have made the statements in the course of their business, vocation or occupation. At least one is believed to be an ex-employee of the Plaintiffs ("I was stupid enough to take a job with this strong armed scam company..."). (Complaint ¶ 26, Exhibits B-D.) The Website Defendants clearly have made the statements in the course of their business or occupation, as their business is the business of running the Websites, which includes attracting visitors to the Websites (which is accomplished through these sensational and false postings), which in turn increases the advertising and other revenue of the Websites.

These facts clearly indicate a violation of the UDTPA. *See Flentye v. Kathrein*, 485 F. Supp. 2d 903, 918 (N.D. Ill. 2007) (allegations sufficient to survive a motion to dismiss; false and misleading statements of fact disparaging plaintiff's business state a claim under UDTPA); *M&R Printing Equip., Inc. v. Anatol Equip. Mfg. Co.*, 321 F. Supp. 2d 949, 951 (N.D. Ill. 2004) (same; statements in question directly impugned the quality of the plaintiff's business and services); *Lampi Corp. v. American Power Products, Inc.*, No. 93 C 1225, 1994 WL 501996, at *3 (N.D. Ill. 1994) (statements calling viability of plaintiff into question and its ability to deliver

23



orders disparaged plaintiffs goods, services or commercial activities and were sufficient to withstand motion to dismiss). Moreover, Plaintiffs do not have to prove monetary damages, loss of profit or intent to deceive to merit injunctive relief. *See, e.g., Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 866, 893 N.E.2d 981, 996 (1st Dist. 2008) (appellate court held that defendants violated UDTPA). The Plaintiffs are being damaged by the Defendants' practices in the form of the public's misunderstanding of the quality of their services and lost business; this is sufficient to warrant injunctive relief. (Complaint ¶¶ 49-51, Exhibits E and F.)

While the UDTPA arguably does not apply to a publisher or other person engaged in the dissemination of information who publish, broadcast or reproduce material without knowledge of its deceptive character, 815 ILCS 510/4, the Website Defendants were expressly put on notice that the postings were false. This notice included the provision of an affidavit from one of the principals of the Plaintiffs attesting to false and damaging nature of the postings. (Complaint ¶ 45, Exhibit I.) Despite the being aware of the false, misleading and damaging nature of the postings, the Website Defendants categorically refused to remove the posts. (Complaint ¶ 45, Exhibits K and L.) The UDTPA *does apply* to a publisher or other disseminator of information who publishes, broadcasts or reproduces material with knowledge of the material's deceptive character.

In sum, there is no question here that postings have been made that directly impugn the quality of the Plaintiffs services by the Defendants in the course of their business or occupation, and that the Plaintiffs have been and are continuing to be harmed by this conduct. The Website Defendants have been made aware of the false nature of these postings, but have refused to take the postings down. The Defendants conduct has been voluntary and intentional. The Plaintiffs

24

thus can show a likelihood of success on the merits of a claim for injunctive relieve under the UDTPA and are also entitled to attorneys' fees and costs.[7]

### 6. Defendants Have Violated Common Law Rules of Misappropriation

The Defendants have misappropriated the Plaintiffs' right to control their name and reputation by making, publishing and disseminating statements that (a) disparage the services and business of Houlihan by false and misleading representations of fact; and (b) misappropriate the Houlihan Marks. Illinois law recognizes a common law doctrine of misappropriation. *Board of Trade v. Dow Jones & Co.*, 108 Ill. App. 3d 681, 689, 439 N.E.2d 526, 532 (1st Dist. 1982), *aff'd*, 98 Ill. 2d 109, 456 N.E.2d 84 (1983). Misappropriation is a species of unfair competition. *Id.*; *see also International News Service v. Associated Press*, 248 U.S. 215 (1918) (enunciating the doctrine of misappropriation). It does not rest solely on direct competitive injury, but instead rests "on the broader principle that property rights of commercial value are to be and will be protected from any form of unfair invasion or infringement." *Board of Trade*, 108 Ill. App. 3d at 689, 439 N.E.2d at 532 (citing *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483, 492 (Sup. Ct. 1950), *aff'd*, 279 App. Div. 632, 107 N.Y.S.2d 795 (1st Dept. 1951) (defendant violated the opera company's right to control its name and reputation)).

As explained by the court in *Metropolitan Opera*:

> The modern view as to the law of unfair competition does not rest solely on the ground of direct competitive injury, but on the broader principle that property rights of commercial value are to be and will be protected from any form of unfair invasion or infringement and from any form of commercial immorality, and a court of equity will penetrate and restrain every guise resorted to by the wrong-doer. The courts have thus recognized that in the complex pattern of modern

---

[7]  For the same reasons as exist under UDTPA, the Plaintiffs have shown a likelihood of success on the merits under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 *et seq.* (the "Consumer Fraud Act"). The Consumer Fraud Act expressly proves that a violation of the UDTPA is a violation of the Consumer Fraud Act. 815 ILCS 505/2.



business relationships, persons in theoretically noncompetitive fields may, by unethical business practices, inflict as severe and reprehensible injuries upon others as can direct competitors.

199 Misc. at 796, 101 N.Y.S.2d at 492. The doctrine will "extend to protect the complaining party from unfair competition or trade practices regardless of how novel or ingenious those practices are. [citation omitted]   The doctrine is 'adaptable and capacious' and has been described as 'encompassing any form of commercial immorality." *Board of Trade*, 108 Ill. App. 3d at 696-97, 439 N.E.2d at 537.

In the present case, the Plaintiffs have a property right in the Houlihan Marks. They also have the right to the exclusive use of their own name and reputation. *Metropolitan Opera*, 199 Misc. at 797, 101 N.Y.S.2d at 494 ("The right to the exclusive use of one's own name and reputation has long been recognized by the courts..."). In using the Houlihan name in the postings and associating that protected name with false and defamatory statements that impugn the quality of the services the Plaintiffs offer and correlate Houlihan with terms such as "scam", "scam artists", "rip offs", "rip off their customers", and "ex-cons", the Defendants have misappropriated the Houlihan Marks, as well as the Plaintiffs' name and reputation. The Plaintiff's entitled to protection by way of injunction. *See, e.g., National Football League Properties, Inc. v. Consumer Enterprises, Inc.*, 26 Ill. App. 3d 814, 819-20 327 N.E.2d 242, 247 (1st Dist. 1975) (finding that plaintiff may be granted relief under a theory of unfair competition even though direct competition was not present; court granted injunction).

### D.   THE BALANCE OF EQUITIES STRONGLY FAVORS PLAINTIFFS

The trial court must decide whether the balance of hardships to the parties and public interest supports granting a preliminary injunction. *Gold v. Zipf Communications Co.*, 196 Ill. App. 3d 425, 435-36, 553 N.E.2d 404, 411 (1st Dist. 1989). The balance of harm decidedly favors Plaintiffs. They are being subjected to constant defamatory statements about their

26



integrity and quality of their services throughout the world, 24 hours a day, seven days a week. The Defendants are disparaging their reputations and the reputations of their principals, employees, agents, and representatives and illegally using Plaintiffs' intellectual property rights without authorization or right. The Defendants' speech is not protected by the Constitution. The Website Defendants have the right to remove the materials and stop using the same under the Terms of Service Agreement and under the CDA, but simply refuse. Why? Because the scandalous comments generate more money for them. The Court can and should enjoin their egregious and unlawful conduct.

WHEREFORE, Plaintiffs, Houlihan Smith & Company, Inc.® and Houlihan Smith Advisors, Inc., respectfully request that the Court enter: (1) A temporary injunction prohibiting all Defendants, their agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from publishing any further statements regarding Houlihan Smith & Company, Inc.®, Houlihan Smith Advisors, LLC, their affiliates and any of their employees, agents or representatives, including but not limited to Andrew (Andy) Smith and Charles Botchway; (2) A temporary injunction ordering all Defendants to remove all statements regarding Houlihan Smith & Company, Inc.®, Houlihan Smith Advisors, LLC, and all of their affiliates and employees, agents or representatives, including but not limited to Andrew (Andy) Smith and Charles Botchway, from all of the Websites; (3) A temporary injunction ordering the Website Defendants to block all access by the individuals who originally posted the defamatory statements from accessing the Websites and/or from posting any comments about Plaintiffs; (4) A temporary injunction against the Website Defendants from continuing to disseminate, publish, use or republish the defamatory statements and to remove any and all reference to the defamatory statements from the Websites, including from the html

text described in Plaintiffs' Verified Complaint; (5) An order compelling the Website Defendants to immediately provide Plaintiffs with all information concerning the identity of individuals and/or entities that have published the defamatory materials, including their IP address, name, address, telephone number, email address and any other information necessary to identify the individual and/or entity responsible for publishing the defamatory statements; (6) An order allowing the parties to conduct expedited discovery over the next 30 days to determine the identities of the individuals and/or entities publishing the false and defamatory statements about Plaintiffs' and their employees, agents, principals and other representatives; (7) An order scheduling a preliminary hearing in this matter on or before May 15, 2010; and (8) Such other relief to which Plaintiffs are entitled.

HOULIHAN SMITH & COMPANY INC. ® and
HOULIHAN ADVISORS, LLC

By: _____
                One of their Attorneys

Richard P. Darke
Rosanne Ciambrone
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
(312) 499-6700
(312) 499-6701 (fax)
Firm Id. No.: 38820

28                147